[Civ. No. 5758. Third Appellate District.—November 18, 1938.]

JOHN L. SHORT, Respondent, v. ORLAND OIL SYNDICATE, LTD. (a Corporation), Appellant.

W. T. Belieu for Appellant.

H. W. McGowan and Gerald Beatty Wallace for Respondent.

PULLEN, P. J.—This appeal is from a judgment in favor of plaintiff, who filed an action upon his own behalf and as assignee of Tom Short, Raymond Taylor, William Meixner and Walter Messinger, for labor performed in drilling for oil for defendant.

The Orland Oil Syndicate, Ltd., the owner of an oil lease upon certain lands, through Mr. Chasseur, its president and manager, employed plaintiff and his assignors to drill an oil well. There is no dispute as to such employment, the time claimed, nor as to the cash actually paid these men. The dispute is as to the rate of such daily wage. Plaintiff in his complaint alleged he was employed as head driller at $11.25 per day; Tom Short also claimed $11.25 per day, and the other three men at $5.25 per day. The court found and entered judgment at the rate of $7 a day for Tom Short, as driller, and $5 a day for each of the others, crediting to each on account of this rate the money actually paid these men, which was $3 a day.

Although there is testimony to the contrary, there is ample to support the finding of the trial court and upon appeal that is sufficient.

Mr. Chasseur, as president and resident manager of the oil company, testified as follows:

"Q. What did you say to them (John and Tom Short) about how much the wages would be? A. I said $3.00 a day. Q. Did you tell them that would be all they would get. A. I told them that if they were successful in bringing in a producer and that once the production was sold we would give them an additional $2.00 a day as a bonus; if the production was sold, and the driller would get $4.00."

John Short testified: "A. The conversation (between the witness and Chasseur) was we were to have part money each month we worked and to wait on him a reasonable time for the balance. . . . A. He wanted to pay $3.00 in cash and wait for the balance; and I told him we ought to have at least $5.00 and wait for the balance. Q. And you finally agreed on $3.00? A. Agreed on $3.00. Q. How long were you going to wait? A. To give him a reasonable time. . . . Q. . . . Was anything said at all about bringing in a well and selling the production as it might reflect upon your salary or wages? A. Nothing."

Tom Short testified as to a conversation between himself and Chasseur prior to his going to work when Mr. Chasseur agreed to pay him "$3.00 a day in cash and the balance later along. For instance when the well came in or a later time when they had derived money from the sale of stock. Q. Was production mentioned then? A. Yes, sir. Q. In what connection was production mentioned? A. Well, it would help to pay the wages at that time."

Ray Taylor, an assignor, testified Tom Short hired him to go to work. His first check was computed on a basis of $2 a day. He complained to Mr. Chasseur. "Q. What did Mr. Chasseur say and what did you say to him about it? A. Well, I said I understood it was supposed to be $3.00 a day and $2.00 more later on. It was supposed to be $5.00 a day, $3.00 cash and $2.00 later on, and he said he could just pay $2.00 and give me $1.00 in stock to make up that $3.00."

William Meixner was hired by Tom Short, who told him the wages were $5, $3 cash, $2 later "when the well came into production".

Messinger, an assignor, did not appear at the trial nor was the assignment to plaintiff established and as to him a judgment was denied.

Chasseur, recalled in rebuttal, testified his agreement with Tom Short, the driller, was $3 in cash and $4 when the well was completed and production sold, and as to the others he stated their testimony was substantially correct and they were to receive $3 cash and $2 when the well was in and production sold. ·

■ The foregoing testimony indicates there is ample support for the findings of the court that the balance was due in a reasonable time, and there is no dispute but that more than a year elapsed between the cessation of work and the filing of the action. Drilling at the well was voluntarily suspended by defendant and it was the theory of the trial court, and we think a correct one, that defendant, having made it impossible for plaintiff and his assignors to receive the balance of their wages out of production, must be held liable for their loss.

It does not here appear that the balance due these workmen was to be paid from any particular fund. ■ It was understood it would be paid when the oil was sold, or the stock sold, but that is not the same as specifying that the payment was to be made from a specific fund, as in *Warman Steel Casting Co.* v. *Redondo Beach Chamber of Commerce,* 34 Cal. App. 37 [166 Pac. 856], and *Miles* v. *McFarlane,* 104 Cal. App. 513, 520 [286 Pac. 507].)

■ As to the claim of appellant that there was a variance between the pleading and the proof, we likewise cannot agree. The pleading and proof were directed toward an indebtedness for work and labor performed by plaintiff and his assignors at the special instance and request of defendant. The only variance, if any, was that the court found the compensation agreed upon was different from that claimed by plaintiff. It was claimed by defendant it was misled by the fact that plaintiff sued upon a specific contract for the payment of a definite wage unconditionally, whereas on the trial the payment was made to depend upon a condition which never happened. It is obvious defendant was not misled, and a variance to be fatal must have misled or served to mislead the adverse party. (*Holden* v. *Messinger,* 175 Cal. 300 [165 Pac. 950].) The fact that defendant introduced evidence controverting the claims of plaintiff and his assignors, in part at

least, and succeeded in obtaining a judgment substantially less than claimed is sufficient to show that appellant was not taken unawares.

█ Certain checks given to plaintiff and his assignors by defendant bore upon the reverse side such endorsements as "wages to 11/25/33 incl.", "wages to 12/9/33 incl.". Appellant now claims that appellant assumed and had a right to assume the checks were in full of all demand. If these endorsements constituted receipts they were not conclusive and the true facts could be shown. (*Greer* v. *Los Angeles Athletic Club*, 84 Cal. App. 272, 273 [258 Pac. 155].) It is clear from the entire record and particularly the testimony of Mr. Chasseur that the amount indicated by the check was never given nor received as payment in full, and the court has so found.

This appeal is without merit, and the judgment is affirmed.

Thompson, J., concurred.