[S. F. No. 18447. In Bank. July 3, 1953.]

CATHERINE GUDELJ, Appellant, v. JOHN GUDELJ, Respondent.

Leo R. Friedman for Appellant.

Jefferson E. Peyser for Respondent.

EDMONDS, J.—Catherine Gudelj was awarded an interlocutory decree of divorce from John Gudelj on the ground of extreme cruelty. She has appealed from those portions of the decree relating to support, custody of the minor child, and the disposition of the property of the spouses.

The parties were married in 1938. Prior to that time, John was owner and operator of the Pacific Avenue Cleaners. He continued this business until 1943. In 1946, after his discharge from military service, he operated the Owl Cleaners in partnership with one Grinton. They dissolved the partnership in the following year, and John purchased a one-fourth interest in the Helene French Cleaners where he began to work as a "benzine man."

In 1948, John made the first payment on a new home, the total purchase price of which was $15,000. Title was taken by a deed which described John and Catherine as joint tenants. The down payment was made in part from community funds and partly from John's separate funds. All subsequent payments were made from his separate property. At the time this action was commenced, some $10,000 or $11,000 remained unpaid on a mortgage against the property.

Catherine commenced an action for separate maintenance and support, and John cross-complained for a divorce. An interlocutory decree of divorce was rendered in favor of Catherine on an amended complaint and against John on his cross-complaint. Physical custody of the minor son was given to Catherine, subject to certain restrictions against removing the boy from the county. In addition, Catherine was awarded

$50 per month for support of the child and alimony of $100 per month for a period of two years.

The court found that an undivided one-fourth interest in the Helene French Cleaners was the separate property of John. It also declared that a one-sixth interest in the home is community property, the remainder being John's separate property. In lieu of her community interest in the home, Catherine was awarded $2,375, to be paid within one year from the date of entry of the decree. For a period of 60 days she was given undisturbed possession of the premises, subject to the condition that if she did not vacate them at the end of that period all payments made by John on the mortgage against the property were to be deducted from the $2,375 mentioned in the decree.

Catherine contends that the provisions of the interlocutory decree which do not allow her to remove the child from the county amount to an abuse of discretion. She argues, also, that the amounts allowed to her for alimony and for support of the child are insufficient. Another contention is that the evidence does not support the findings that a one-fourth interest in the Helene French Cleaners is the separate property of John and that his interest in the home is other than that of a joint tenant. Finally, she says, it was error for the trial court, by an interlocutory decree, to dispose of the property of the spouses.

In reply, John denies that the decree is erroneous in any respect. Furthermore, he asserts, Catherine has accepted benefits from the decree and, by doing so, she has waived any right she might have had to appeal from it.

According to the terms of the decree, Catherine may not remove the child from the territorial limits of the City and County of San Francisco for any period in excess of five days, except that once in each calendar year she may do so for a single continuous period not exceeding three weeks. She asserts that this restriction is arbitrary and unreasonable, in that it fails to provide for the possibility of her being compelled to move to another county for the health of the child or for her personal convenience.

In a divorce proceeding involving the custody of a minor, primary consideration must be given to the welfare of the child. The court is given a wide discretion in such matters, and its determination will not be disturbed upon appeal in the absence of a manifest showing of abuse. (*Gantner* v. *Gantner*, 39 Cal.2d 272, 275 [246 P.2d 923];

*Taber* v. *Taber*, 209 Cal. 755, 757 [290 P. 36].) "Every presumption supports the reasonableness of the decree." (*Runsvold* v. *Runsvold*, 61 Cal.App.2d 731, 733 [143 P.2d 746].)

 Custody of the child was given jointly to Catherine and John, with physical custody in Catherine. John was given the right to visit the boy at reasonable times and to have him for at least one day each week. Presumably, such visits are for the best interests of the child. The record includes testimony to the effect that Catherine had threatened to remove the boy from the state and to change his name, thus defeating John's visitation rights. Under such circumstances, it cannot be said that the restrictions imposed upon removal of the child amount to an abuse of discretion. The trial court maintains continuing jurisdiction of the matter and, in the future, if circumstances should arise of the kind suggested by Catherine, appropriate modifications of the custody provisions may be made.

 The amount to be allowed for alimony and support of a child are matters which also lie within the sound discretion of the trial court. (*Brockmiller* v. *Brockmiller*, 57 Cal.App.2d 623, 625 [135 P.2d 184].) No abuse of that discretion is shown here. Catherine was given alimony amounting to $100 per month for two years. In addition, she was given some money which was community property and an insurance business producing income of about $700 per year. Prior to 1947, Catherine earned from $280 to $300 per month as a bookkeeper and there is evidence that she is physically able to resume employment. An award of $50 per month for the support of the child, although not overly generous, cannot be said to be so inadequate as to amount to an abuse of discretion.

According to the record, the undivided one-fourth interest in the Helene French Cleaners was purchased by John for $11,500. John paid $1,500 of that amount in cash and executed a note for $10,000. No specific finding was made concerning the status of the note, but the trial court found that the cash payment was made from John's separate funds and concluded that the entire partnership interest is his separate property. Catherine contends that the evidence does not support these findings.

 The evidence concerning the source of the $1,500, although confused and conflicting, is sufficient to support a

finding that it was derived from John's separate property. John testified that the money came from the Owl Cleaners and, although he further stated that the equipment and fixtures of the business had been sold at a loss, apparently at least $1,500 was obtained from that source. ▇ Catherine claims that the Owl Cleaners must be presumed to have been community property because the business was acquired during the existence of the marriage. (Civ. Code, § 164.) But that presumption is controlling only when it is impossible to trace the source of specific property. (*Falk* v. *Falk*, 48 Cal.App.2d 762, 768 [120 P.2d 714].) ▇ Here the presumption is rebutted by the testimony of John that the Owl Cleaners was purchased with funds acquired from the sale of the equipment of the Pacific Avenue Cleaners, admittedly his separate property, and from a bank account held jointly by John with his mother in which was deposited the proceeds from the sale of real property owned by them prior to John's marriage.

However, the record does not support the conclusion that the balance of the purchase price of the partnership interest was made from John's separate property. That part of the payment was represented by a note signed by John. ▇ There is a rebuttable presumption that property acquired on credit during marriage is community property. (Civ. Code, § 164; *Hogevoll* v. *Hogevoll*, 59 Cal.App.2d 188, 193-194 [138 P.2d 693].) ▇ But "funds procured by the hypothecation of separate property of a spouse are separate property of that spouse." (*Estate of Abdale*, 28 Cal.2d 587, 592 [170 P.2d 918].) ▇ The proceeds of a loan made on the credit of separate property are governed by the same rule. (*Estate of Ellis*, 203 Cal. 414, 416-417 [264 P. 743].) ▇ In accordance with this general principle, the character of property acquired by a sale upon credit is determined according to the intent of the seller to rely upon the separate property of the purchaser or upon a community asset. (*Estate of Ellis, supra*, 203 Cal. 414, 416; *Hogevoll* v. *Hogevoll, supra*, 59 Cal.App.2d 188, 193-194; and see *Schuyler* v. *Broughton*, 70 Cal. 282, 285 [11 P. 719]; *Vandervort* v. *Godfrey*, 58 Cal. App. 578, 582 [208 P. 1017].) ▇ In the absence of evidence tending to prove that the seller primarily relied upon the purchaser's separate property in extending credit, the trial court must find in accordance with the presumption. (See *Falk* v. *Falk, supra*, 48 Cal.App.2d 762, 767.) ▇ No testimony was offered concerning the intent of the seller in extending credit to John. John asserts, however,

that shortly before the credit transaction, he and his mother sold real property for some $30,000, and the seller must have relied upon John's interest in the proceeds. Furthermore, he contends, his previous failures in attempts to operate cleaning businesses demonstrate that the basis for credit could not have been his personal ability and capacity. However, even if these facts be accepted as true, there is no evidence that the seller had knowledge of their existence. There being no satisfactory evidence to contradict the presumption, it must prevail.

Between the date of purchase of the partnership interest and the commencement of the present action, John withdrew from the profits of the business $3,600 per year. In addition, during that period a sum of $4,000 was withdrawn from the profits and credited upon his note. The trial court found $3,600 per year to be a reasonable wage for John's services to the partnership and that $4,000 was a reasonable return for two years on the $11,500 investment. These findings are supported by substantial evidence.

The trial court having concluded that the entire one-fourth interest in the partnership was John's separate property, no problem concerning an apportionment between the community and the separate property of John was presented. However, the $4,000 received by John as profit must be apportioned between the parties.

The husband has the management of the community personal property (Civ. Code, § 172) and, therefore, John properly could apply the community's share of the profits as well as his own toward the reduction of the debt incurred in purchasing the interest in the business. There being no evidence as to the present value of the one-fourth interest, it must be presumed that at the commencement of the suit it was worth $11,500, the amount he paid for it. John, having contributed $1,500, or 3/23 of the purchase price, is entitled to the same proportion of the $4,000, or $521.74. The community must be credited with the balance.

Despite the taking of title to the home by a joint tenancy deed, it was found that John did not intend to make a gift of any present interest to Catherine. The respective interests of John and Catherine in the property were determined according to the sources of the funds used to purchase it. John asserts that Catherine may not now urge that they own the property in joint tenancy because by her pleading she alleged

that it belongs to the community. ▮ "It has been repeatedly held that the question whether a variance between pleading and proof in a given case is material must be determined from the circumstances (citations) and that a variance is immaterial and may be disregarded where the case was as fully and fairly tried upon the merits as though the variance had not existed." (*Chelini* v. *Nieri*, 32 Cal.2d 480, 486 [196 P.2d 915].) In other words, "a variance to be fatal must have misled or served to mislead the adverse party." (*Short* v. *Orland Oil Syndicate, Ltd.*, 29 Cal.App.2d 326, 329 [84 P.2d 324].) ▮ The joint tenancy deed was placed in evidence and the issue was fairly argued and presented for determination. Moreover, John does not claim that he was misled by the pleadings.

▮ On the merits of the issue as to the ownership of the home, "it is well settled in this state that the form of the instrument under which a husband and wife hold title is not conclusive as to the status of the property and that property acquired under a joint tenancy deed may be shown to be actually community property or the separate property of one spouse according to the intention, understanding or agreement of the parties." (*Socol* v. *King*, 36 Cal.2d 342, 345 [223 P.2d 627].) ▮ "Whether the evidence against the presumption is sufficient to overthrow it, is a question of fact." (*DeBoer* v. *DeBoer*, 111 Cal.App.2d 500, 504 [244 P.2d 953].) ▮ However, the presumption arising from the form of the deed may not be rebutted solely by evidence as to the source of the funds used to purchase the property. (*Siberell* v. *Siberell*, 214 Cal. 767, 773 [7 P.2d 1003]; *In re Rauer's Collection Co.*, 87 Cal.App.2d 248, 257 [196 P.2d 803]; and see *Cash* v. *Cash*, 110 Cal.App.2d 534, 538 [243 P.2d 115].) ▮ Nor can the presumption be overcome by testimony of a hidden intention not disclosed to the other grantee at the time of the execution of the conveyance. (*Socol* v. *King*, *supra*, 36 Cal.2d 342, 346; *Watson* v. *Peyton*, 10 Cal.2d 156, 158 [73 P.2d 906]; *Shaver* v. *Canfield*, 21 Cal.App.2d 734, 741 [70 P.2d 507].) ▮ This principle is not contrary to the general rule that "parol evidence is admissible to establish the absence of an intention to make a gift of either separate or community property, although the instrument of conveyance is made by the husband to the wife alone or as joint tenant with him or is from a third person to the wife or to both as joint tenants at the husband's direction." (*Huber* v. *Huber*, 27 Cal.2d

784, 788 [167 P.2d 708].) ■ Such evidence always is admissible when it tends to prove a mutual understanding or agreement that the other spouse was not to receive a present gift under a conveyance of property to both spouses as joint tenants. (*Huber* v. *Huber, supra,* 27 Cal.2d 784, 789.)

In the Socol case, Parachiva King purchased certain real and personal property with funds which came partly from the sale of the ''joint property'' owned by her and her husband and partly from her separate property. Title was taken in the names of Mrs. King and her husband as joint tenants. Upon the death of Mrs. King, her executrix sought to show that she had a mistaken opinion of the law as to the legal effect of a conveyance in joint tenancy. It was held that unless there is an oral or written agreement as to the ownership of property, or such an understanding may be inferred from the conduct or declarations of the spouses, ''a true joint tenancy is created by a conveyance to husband and wife in that form, although the property is purchased with community funds . . . , or with the separate funds of the husband. . . . When property is purchased with community funds and title is taken in joint tenancy at the request of the wife, the secret intention of the wife that the property shall remain a part of the community is not effective. 'She cannot defeat her act by testimony of a hidden intention not disclosed to the other party at the time of the execution of the document.' . . . The same rule should be applied where joint funds are used to buy the property. It follows that the trial court properly held that decedent's secret belief as to the legal result of procuring title to the California property in joint tenancy could not affect its actual status.'' (Pp. 346-347.)

■ Applying the rule of the Socol case to the facts here shown, John's testimony as to his undisclosed intention not to make a gift of a present interest in the property is not evidence of a mutual understanding or agreement negativing the express terms in the deed. It is of no significance that John was unaware of the legal effect of the deed. Nor is it material that the home was purchased primarily from John's separate funds, Catherine being aware of their source. All of these facts, taken together, provide no basis for an inference of a mutual understanding or agreement between John and Catherine that the separate and community nature of the funds used in the purchase was to be preserved. Therefore, there being no substantial evidence tending to rebut the

presumption created by the joint tenancy deed, the property is owned by the parties in joint tenancy.

Catherine correctly contends that the portions of the interlocutory decree purporting to make an immediate disposition of property are erroneous. (*Dowd* v. *Dowd*, 111 Cal.App.2d 760, 765 [245 P.2d 339]; *Slavich* v. *Slavich*, 108 Cal.App.2d 451, 457 [239 P.2d 100]; *Wilson* v. *Wilson*, 76 Cal.App.2d 119, 129 [172 P.2d 568].) No sound reason appears for distinguishing between community and separate property in this regard.

John argues that the appeal should be dismissed because Catherine has accepted benefits under the interlocutory decree. He asserts that Catherine "has remained in the premises until this time, and has paid no rent." Therefore, he concludes, "Except for the decree there would be no $2,375 against which deductions could be made. In effect appellant has accepted the $2,375 or at least the greater part thereof." It is asserted also, that even if it be true that the home is owned by himself and Catherine in joint tenancy, her occupancy to his exclusion is inconsistent with that form of ownership and can be accounted for only upon the theory that she is doing so in accordance with the terms of the decree.

"It is the settled rule that the voluntary acceptance of the benefit of a judgment or order is a bar to the prosecution of an appeal therefrom." (*Schubert* v. *Reich*, 36 Cal.2d 298, 299 [223 P.2d 242].) However, "(i)n order to bar the right of appeal on the ground of acquiescence, 'the acts relied upon must be such as to clearly and unmistakably show acquiescence, and it must be unconditional, voluntary, and absolute.' " (*Duncan* v. *Duncan*, 175 Cal. 693, 695 [167 P. 141].) "It is only in cases where an appellant is shown to have received and accepted advantages from a judgment to which such appellant would not be entitled in the event of a reversal of the judgment that her acceptance thereof has been held to operate to defeat the appeal." (*Browning* v. *Browning*, 208 Cal. 518, 525 [282 P. 503].) Otherwise stated, "(w)here the different portions of a judgment are severable, a party by voluntarily accepting the fruits of one portion thereof does not necessarily estop himself to attack other and severable portions thereof upon appeal." (*Preluzsky* v. *Pacific Coop. Cafeteria Co.*, 195 Cal. 290, 293 [232 P. 970]; *People* v. *Roath*, 62 Cal.App.2d 241, 246 [144 P.2d 648].) As to severability, "(t)he test of whether a portion of a judgment appealed from is so interwoven with its other

provisions as to preclude an independent examination of the part challenged by the appellant is whether the matters or issues embraced therein are the same as, or interdependent upon, the matters or issues which have not been attacked." (*American Enterprise, Inc.* v. *Van Winkle,* 39 Cal.2d 210, 217 [246 P.2d 935].)

In the present case the determinative portions of the interlocutory decree clearly are severable. There is no appeal from that part of it which provides for the division of the furniture. And it does not appear that any question concerning the furniture was "the same as, or interdependent upon" the order fixing the interests of the parties in the home. In lieu of a community interest in the real property Catherine was awarded money. There is nothing in the record which shows that Catherine has clearly and unmistakably acquiesced in the trial court's division of property interests. Her occupancy of the home is consistent with her position that it is owned by her and John as joint tenants. It does not appear that Catherine has excluded John from the premises or prevented him from asserting his rights as a joint tenant. Nor may it be successfully urged that by reason of payments on the mortgage claimed to have been made by John, Catherine has voluntarily accepted a portion of the money awarded her "in lieu of any . . . interest" in the home. For these reasons there has not been an "unconditional, voluntary, and absolute" acceptance of benefits to which Catherine is not entitled.

Insofar as the interlocutory decree disposes of the real property and concerns the rights and obligations of the parties with respect thereto, and disposes of the partnership interest in Helene Cleaners, it is reversed and the cause is remanded for a new trial upon the issues relating thereto; in all other respects the decree is affirmed, appellant to recover her costs on appeal.

Gibson, C. J., Carter, J., Traynor, J., and Spence, J, concurred.

Shenk, J., and Schauer, J., concurred in the judgment.

Respondent's petition for a rehearing was denied July 28, 1953.