[S. F. No. 21035.   In Bank.   Oct. 4, 1962.]

MARY HELEN MACHADO, Plaintiff and Appellant, v. JOHN R. MACHADO, Defendant and Appellant.

502

Kane & Canelo and Thomas J. Kane, Jr., for Plaintiff and Appellant.

Natalie J. Holly for Defendant and Appellant.

TRAYNOR, J.—The trial court entered an interlocutory decree of divorce in favor of Mary Machado on the ground of extreme cruelty and refused to grant a divorce to defendant and cross-complainant John Machado. The court determined the character of various items of property, and awarded plaintiff alimony, custody of the two minor children, $75 per month for each child as support and maintenance, and exclusive possession of the joint tenancy family residence property until further order of the court. The court also enjoined defendant from molesting, annoying, or striking plaintiff. No appeal was taken from the interlocutory decree of divorce, but both parties appeal from other parts of the judgment.

### Property Rights

The parties were married in June 1950 and separated in March 1959. At the time of the marriage plaintiff owned no separate property. Defendant had title to three parcels of ranch land (40, 38 and 2 acres respectively), various items of farming equipment, cattle, an automobile, and a $40,000 savings account. Although he paid for the 40-acre and the 2-acre parcels before the marriage, he had paid only $3,000 of the $12,000 purchase price on the 38-acre parcel. It is conceded that after the marriage he paid $1,700 on this parcel with his separate funds.

During the marriage defendant devoted all of his working time and energy to farming and dairy operations on the three parcels and on another 40-acre parcel leased from his father. All income during the marriage was derived from these operations, except interest on the spouses' $8,500 joint savings and loan account and defendant's $40,000 account. The proceeds of the farm and dairy were deposited in a single commercial bank account. All expenditures were made from this account, including payments for the balance due on the 38-acre parcel ($7,300) and for the family residence property, household furniture, a 1959 Oldsmobile, farming and dairy equipment, and cattle.

The trial court determined that the parties owned no community property, that they owned as joint tenants the family residence and the $8,500 savings account, and that defendant owned as his separate property the three parcels of ranch

land, all farming equipment, tractors and cattle, the 1959 Oldsmobile, the household furniture, and the $40,000 savings account. In doing so the court relied on *Estate of Pepper*, 158 Cal. 619, 623-624 [112 P. 62, 31 L.R.A. N.S. 1092], and held that the agricultural income of defendant's separate property and the property purchased with this income was entirely his separate property. ██ In *Estate of Neilson*, 57 Cal.2d 733, 741 [22 Cal.Rptr. 1, 371 P.2d 745], we overruled the *Pepper* case and held that the part of the profits of a separate property enterprise attributable to the husband's efforts are community property, whether the enterprise be classified as "commercial" or "agricultural."

██ The spouses' federal income tax returns indicate that from the date of the marriage until the end of 1959 the net income of the enterprise after federal income taxes averaged approximately $170 per month.[1] This income should have been apportioned between defendant's separate property and the community property. Unless expenditures for family living expenses exceeded the amount apportioned to the community property,[2] community funds were used for some of the payments for real and personal property, thus giving the community an interest in one or more of the items found to be defendant's separate property.

Plaintiff and defendant challenge the findings that the family residence and the $8,500 savings and loan association account are joint tenancy property. Both parties maintain that they did not intend to create joint tenancies and that the home and savings account have the same character as their source, i.e., the receipts from the farming and dairy enterprise.[3]

██ Each party testified that when the family residence was purchased they did not instruct the bank handling the transaction to put the deed in joint tenancy. Plaintiff testified that she went to the bank and signed papers when defendant told her to do so. Defendant testified that he signed papers at the bank at a different time, that he did not see plaintiff's

---

[1]This figure includes the full amount of capital gains realized from the sale of cattle and excludes interest payments on the two savings accounts.

[2]No evidence of family living expenses was introduced at the trial.

[3]Plaintiff contends that these receipts were entirely community property because they represent defendant's earnings during the marriage; defendant contends that they were entirely separate property on the authority of *Estate of Pepper, supra*. To the extent that these receipts were profits of the enterprise, neither contention can be sustained. (*Estate of Neilson, supra*.)

name on the deed, and that he did not intend to give her an interest in the house.

Although a joint tenancy deed is not conclusive as to the character of real property, it creates a rebuttable presumption that it is held in joint tenancy. The presumption created by the deed cannot be overcome by testimony of the hidden intentions of one of the parties, but only by evidence tending to prove a common understanding or an agreement that the character of the property was to be other than joint tenancy. Since there was no evidence of a common understanding or an agreement the presumption was not overcome. (*Gudelj* v. *Gudelj*, 41 Cal.2d 202, 212-213 [259 P. 2d 656]; *Socol* v. *King*, 36 Cal.2d 342, 345-346 [223 P.2d 627].)

Similar principles apply to the joint savings and loan account. Financial Code section 7602 provides: ''When shares or investment certificates are issued in the name of two or more persons whether minor or adult as joint tenants or in form to be paid to any of them or the survivors of them, such shares or certificates and all dues paid thereon become the property of such persons as joint tenants.''[4] In *Paterson* v. *Comastri*, 39 Cal.2d 66, 71 [244 P.2d 902], we held that similar language applying to joint bank accounts now contained in Financial Code section 852 created a rebuttable presumption of joint tenancy that may be overcome by proof that the owner of the funds, when making the deposit, did not intend to create a true joint tenancy. This holding applies also to section 7602. (See *Pruyn* v. *Waterman*, 172 Cal.App.2d 133, 136-137 [342 P.2d 87].) Whether the presumption was overcome was a question of fact for the trial court. (*Gudelj* v. *Gudelj*, *supra*; *Paterson* v. *Comastri*, *supra*, 39 Cal.2d at p. 73.)

Defendant withdrew all the money from the joint account without plaintiff's consent immediately after the parties separated. He had the savings and loan association transfer $3,500 to a new account established in his and another person's name and received a check for the remainder of the funds. He offered no evidence as to the disposition of these funds. The trial court therefore should have provided in the judgment in accordance with its memorandum opinion that defendant ac-

[4]This section did not become operative until 1953. At the time the spouses' account was opened in 1952, it was controlled by almost exactly the same language contained in Building and Loan Association Act, § 8.04, Stats. 1931, ch. 269, p. 514, as amended by Stats. 1951, ch. 451, p. 1472.

count for half the amount of the parties' joint account at the time that account was closed.

Defendant contends, and plaintiff concedes, that the trial court had no jurisdiction to award plaintiff the exclusive use and possession of the family residence until further order of the court.

█ In a divorce action the court does not have the authority to award any of the separate property of one spouse to the other. (*Fox* v. *Fox,* 18 Cal.2d 645, 646 [117 P.2d 325].) Neither can it award the wife exclusive possession of real property owned by the spouses as joint tenants. (*Carter* v. *Carter,* 148 Cal.App.2d 845, 848-849 [307 P.2d 630]; *Jenkins* v. *Jenkins,* 110 Cal.App.2d 663, 665 [243 P.2d 79]; *Barba* v. *Barba,* 103 Cal.App.2d 395, 396 [229 P.2d 465]), except as provided in Civil Code section 157. That section provides that in divorce proceedings "the court may make orders for temporary exclusion of either party from the family dwelling or from the dwelling of the other, until the final determination of the action." (See also Code Civ. Proc., § 949a.) █ The purpose of this section is to protect the spouse's right to the exclusive occupancy of his or her or the family dwelling pending final determination of the action. █ The trial court therefore erred in awarding plaintiff not simply the exclusive right to occupy the dwelling but also the exclusive right to use it in any way she might see fit. Moreover, its order was not limited in time to the final determination of the action.

### Child Support Award

█ There is no merit in defendant's contention that he does not have the ability to pay the child support award of $75 per month for each child. His total income from 1954 through 1959 averaged approximately $300 per month after the payment of federal income taxes, and he owns assets of substantial value.

### The Injunction

Defendant attacks the injunction that restrains him from molesting, annoying, or striking plaintiff. The word "striking," as conceded by plaintiff, must be deleted from the order because there is no evidence that defendant struck or threatened to strike plaintiff. (*De Haviland* v. *Warner Bros. Pictures, Inc.,* 67 Cal.App.2d 225, 238 [153 P.2d 983]; *People* v. *Robin,* 56 Cal.App.2d 885, 887 [133 P.2d 436].)

█ There is no merit in defendant's contention that the words "molesting" and "annoying" are so vague and un-

certain as to render the injunction void. (See *People* v. *Moore,* 137 Cal.App.2d 197, 199 [290 P.2d 40] ; *People* v. *Pallares,* 112 Cal.App.2d Supp. 895, 901 [246 P.2d 173].) The language of the injunction must be interpreted in the light of the record (*City of Vernon* v. *Superior Court,* 38 Cal.2d 509, 514 [241 P.2d 243] ; *Gelfand* v. *O'Haver,* 33 Cal.2d 218, 222 [200 P.2d 790]) which discloses the kind of conduct enjoined. (Compare *Gottlieb* v. *Superior Court,* 168 Cal.App.2d 309, 312 [335 P.2d 714].) On several occasions defendant made unfounded accusations that plaintiff had committed adultery and used abusive language in her presence; he twice parked his truck within sight of the family home and a strange man came from the truck to the front door of the house and asked plaintiff if a ''sporting girl'' was there; and he sometimes locked plaintiff out of the house late at night so that once she was required to have a policeman help her gain entry.

The judgment is affirmed insofar as it awards alimony and child support, adjudges that the family residence is held in joint tenancy, adjudges that the savings and loan account was held in joint tenancy, and enjoins defendant from molesting or annoying plaintiff. In all other respects the parts of the judgment appealed from are reversed. Defendant shall bear the costs of these appeals.

Gibson, C. J., Schauer, J., McComb, J., Peters, J., White, J., and Tobriner, J., concurred.