Filed 11/5/14  Alkasabi v. Chandler Heights AZ CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| OSAMA A. ALKASABI,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CHANDLER HEIGHTS AZ, LLC,<br><br>    Defendant and Respondent. | D064652<br><br><br>(Super. Ct. No. 37-2011-00099949-CU-FR-CTL) |


APPEAL from a judgment and order of the Superior Court of San Diego County, Joel R. Wohlfeil, Judge.  Affirmed; motions to dismiss and to declare appellant a vexatious litigant are denied.


Osama A. Alkasabi, in pro. per., for Plaintiff and Appellant.

ARC IP Law and Ariel J. Sabban for Defendant and Respondent.

Plaintiff and appellant Osama A. Alkasabi appeals from a judgment of dismissal and an order granting a motion by defendant and respondent Chandler Heights AZ, LLC (Chandler) to enforce a settlement of the claims in the complaint Alkasabi filed.  (Code Civ. Proc., § 664.6; all undesignated statutory references are to the Code of Civil

Procedure.)  We affirm the judgment of dismissal and deny Chandler's related motions to dismiss and to declare Alkasabi a vexatious litigant.

FACTUAL AND PROCEDURAL BACKGROUND

A.  Prior Opinion; Allegations of Complaint

This court previously decided *Alkasabi v. Chandler Heights AZ, LLC* (Dec. 21, 2012, D061435 [nonpub. opn.]; our prior opinion), denying Chandler's appeal from an order denying its special motion to strike the complaint.  (Anti-SLAPP statute, § 425.16.) We utilize some of the introductory material from that opinion to provide background for describing the current issues.

In March 2010, "Alkasabi, a real estate broker, entered into an exclusive listing agreement with Chandler to sell [certain residential] property.  The listing agreement was set to expire on March 12, 2011.  Thereafter, Alkasabi discovered that the square footage of the property had been embellished.  The square footage of the home was claimed to be 3840, when it was actually 3272.  In August 2010, Alkasabi met with Chandler's counsel regarding Alkasabi's discovery of the square footage discrepancy.  . . .  After the listing agreement expired, Alkasabi attempted to extend it; however, the parties did not sign another listing agreement.

"In October 2011, Alkasabi filed this action against Chandler, alleging causes of action for intentional and negligent misrepresentation, breach of fiduciary duty, breach of contract and negligence.  The causes of action for intentional and negligent misrepresentation and negligence alleged that Chandler falsely represented certain characteristics of the property to Alkasabi for the purpose of inducing him to enter into

2

the listing agreement. Alkasabi asserted that Chandler knew its representations to him regarding the property were false because it alleged these falsehoods as the plaintiff in [a related] case. Alkasabi claims that he relied on Chandler's false representations by listing the property for sale and that he was damaged by the loss of his six percent commission. Alkasabi's breach of fiduciary duty cause of action recast the above allegations, asserting that Chandler breached fiduciary duties owed to him by failing to disclose the problems surrounding the property.

"In his breach of contract claim, Alkasabi alleged that he performed all the duties required of him under the listing agreement, such as marketing the property, hiring an appraiser to remeasure the square footage, holding open houses, and bringing in cash buyers. Among other things, he claimed that Chandler breached the listing agreement and an extension thereto by[] not paying his commission, withdrawing the property from sale thereby making the property unmarketable during the listing period, claiming it was unaware of any pending or threatened action that may affect its ability to transfer the property, and not paying his commission from its funds or escrow proceeds."

On remand from Chandler's unsuccessful appeal of the order denying its special motion to strike, the trial court heard demurrers and discovery disputes. Chandler cross-complained against Alkasabi for rescission of the real estate listing agreement, also claiming Alkasabi had breached his fiduciary duties and engaged in constructive fraud in the transaction. Alkasabi was representing himself in propria persona. According to the headings on the various e-mails he has lodged, Alkasabi has a realtor's license and holds several professional degrees and credentials (e.g., an M.B.A. and a J.D.).

3

After Alkasabi sent out a notice for Chandler's principal's deposition to take place in Arizona, he cancelled it without notice to opposing counsel. Both for that incident and for Alkasabi's defective motion to compel further responses to discovery, monetary sanctions were awarded on May 21, 2013 against Alkasabi, consisting of attorney fees and expenses totaling $4,276, payable within 30 days of the rulings.

At a judicial settlement conference on June 11, 2013 (Judge Thomas P. Nugent), Chandler's principal did not attend and no oral settlement was reached at that time. However, a written settlement agreement (the Agreement) was drafted by the attorney for Chandler, providing that Alkasabi would receive from Chandler "consideration equal to . . . $60,000," as payment in full "for any and all monies alleged to be due and owing as a result of the Dispute between the Parties." In return, Alkasabi would dismiss the action, while Chandler would dismiss the cross-complaint and waive enforcement of the $4,276 sanctions awards against Alkasabi.

Drafts of the Agreement were circulated, providing it would become "effective upon the date of final execution by any Party hereto." Signatures were allowed to be provided in counterpart, and performance was due 10 days after its effective date. The Agreement invokes section 664.6 procedures: "The Parties agree and acknowledge that this Agreement shall be binding and enforceable, and will request under C.C.P. § 664.6 that the court retain jurisdiction in the trial department to implement and enforce this settlement if the case is dismissed before all terms of the settlement are satisfied."

4

The Agreement states it is made for the benefit of the parties and there are no third party beneficiaries to it. It provides each party would bear its own attorney fees, except that fees incurred in enforcement of the settlement agreement would be awarded to the prevailing party.

There were many difficulties in finalizing the Agreement. Chandler's representatives signed it June 12, but on June 20, they notified Alkasabi they were revoking their consent to the Agreement, because he continued to refuse to provide his signature, and they demanded prompt payment of the sanctions awards. Alkasabi dated his signature on the Agreement as June 14, 2013. Chandler's principal again signed the Agreement on June 24, 2013.

After the Agreement was signed, Chandler obtained an assignment of an outstanding money judgment in favor of Coldwell Banker (not a party here), dated November 23, 2009, against Alkasabi in another case (the "assigned judgment"). (*Alkasabi v. Seahaus La Jolla Owners Association* (SDSC No. GIC876598) (the "Seahaus Case".) A notarized acknowledgment of assignment of judgment stated that the balance owed on the judgment was $89,000. On July 1, 2013, Chandler filed a notice of lien in the current action. (§ 708.410 et seq. [governing liens in pending proceedings].)

### B. Cross-Motions to Enforce Settlement; Rulings

Alkasabi brought an ex parte request on June 27, 2013 to enforce his understanding of the Agreement. He provided his own declaration that incorporated numerous e-mails, stating that he was due a net $60,000 cash payment, which he thought had been orally arranged and approved at the settlement conference. He argued there was

5

"assent, consent and acceptance of all terms of" and a "meeting of the minds on" the Agreement. When Chandler supplied Alkasabi with a copy of its recent signature page for the Agreement, Alkasabi responded that the attempted revocation was ineffective and that Chandler had breached the Agreement. The record does not show that Alkasabi paid the $4,276 sanctions to Chandler. The trial court set the matter for hearing.

Chandler brought a cross-motion to enforce the Agreement, contending that its June 24 signature was an acceptance of Alkasabi's counteroffer. Chandler took the position that the lien it had recently acquired on any recovery to be obtained in this action entitled it to set off the assigned judgment against the settlement amount ($60,000). Chandler's attorney's declaration referenced the exhibits presented in support of its cross-motion and sought judicial notice of them, including the acknowledgment of assignment of judgment (the amended Seahaus Case judgment), and an "Acknowledgment of (Partial) Satisfaction of Judgment" for $60,000 filed in the Seahaus Case.

For the July 26, 2013 hearing on the cross-motions, the trial court issued a tentative ruling requesting that the parties address, at argument, whether the meaning of "consideration" as used in the Agreement was reasonably susceptible to more than one interpretation, and if so, whether there was or was not a meeting of the minds to establish mutual consent to settle the dispute. At the outset of argument at the hearing, the trial court swore Alkasabi in as a witness, to acknowledge his pro per status and to ensure the integrity of the representations that he was making to the court. Alkasabi sought to take his cross-motion to enforce the Agreement off calendar or to have it denied.

6

The trial court heard argument, addressed the issues and granted the Chandler motion, as follows: "The—the one and only agreement that the Court is being asked to enforce is the agreement that both parties acknowledge having been signed at some point in time, which arose out of the settlement conference before Judge Nugent. [¶] The disputed language is consideration equal to and what that means. The Court finds that the reference to 'consideration equal to' is broad enough to encompass the interpretation being advocated by the defense and is not limited as being advocated by plaintiff."

Alkasabi objected that he was still entitled to a judgment for $60,000, and the court stated, "Sir, I've heard enough. The Court grants the motion and directs the judgment be entered in accordance with the reasonably objective terms of the agreement that at one time both parties asked the Court to enforce. Judgment will be entered accordingly and all dates vacated. Thank you very much." A final order vacated the tentative ruling and granted Chandler's motion to enforce the Agreement.

Subsequently, Alkasabi sought reconsideration of the order, arguing there was no consideration because he did not receive any money. He also claimed there was no mutual assent, because "you can't have somebody going—after they agree with me—to buy something else to pay for my debt. That doesn't work that way, Your Honor." Reconsideration was denied for lack of new facts, and enforcement attorney fees were awarded to Chandler ($28,970). Judgment was entered dismissing the entire action with prejudice. Alkasabi appeals.

7

DISCUSSION

I

*APPELLATE MOTIONS DEFERRED TO THIS PANEL*

During record preparation, Chandler filed a motion to dismiss the appeal, based on acceptance of benefits principles. It claimed that Alkasabi had accepted the benefits of the orders (e.g., failing to pay the monetary sanctions due) and he thus waived the right to appeal. (See *Gudelj v. Gudelj* (1953) 41 Cal.2d 202, 214 [voluntary acceptance of benefits of a judgment bars an appeal from it]; *Epstein v. DeDomenico* (1990) 224 Cal.App.3d 1243, 1246-1248.) Opposition and judicial notice requests were received. (Evid. Code, § 459.) In an order of December 10, 2013, the motion to dismiss was deferred to this merits panel.

Previously, this court denied Chandler's motion to strike the opening brief and appendix. However, Chandler still claims dismissal is appropriate because Alkasabi's briefing and record are deficient in form and substance. (Cal. Rules of Court, rule 8.204(a)(1)(C) [requiring support of references to matters in the record with citations to it], all rule references are to these rules unless noted; see also *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246 [failure to do so waives arguments].)

We have also received Chandler's motion seeking a declaration that Alkasabi is a vexatious litigant who should be subject to some or all of the orders provided in section 391 et seq. (Stay, § 391.6; furnishing of security, §§ 391, subd. (c), 391.3, subd. (a); dismissal, § 391.4; and/or entry of a prefiling order, § 391.7.) Not only Alkasabi's recent appellate proceedings are referenced as allegedly vexatious, but also his out-of-state and

8

federal district court and bankruptcy court trial proceedings. (See, e.g., *In re R.H.* (2009) 170 Cal.App.4th 678, 691-692.) Opposition and reply papers have been received. This motion was also deferred for decision by this merits panel.

We have examined both motions and considered the relief requested. Under all these circumstances, we deem it the most appropriate course to exercise our discretion to deny the motions and to reach the merits of the substantive issues presented.

II

*STANDARDS OF REVIEW*

A.  Appellant's Burden

An appellant has the burden to provide an adequate record and affirmatively to show reversible error. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; *Ballard v. Uribe* (1986) 41 Cal.3d 564, 574.) All intendments and presumptions are made to support the judgment on matters as to which the record is silent. (*Denham, supra*, at p. 564.) If the judgment or order is correct on any theory, the appellate court will affirm it regardless of the trial court's reasoning. (*Estate of Beard* (1999) 71 Cal.App.4th 753, 776-777; *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 18-19.)

As an appellant, Alkasabi has the obligation to present substantive arguments on appeal that are based on applicable authorities and citations to the record, and to attempt to show the challenged orders lack some adequate factual, legal, or jurisdictional basis. (See, e.g., *Nwosu v. Uba, supra*, 122 Cal.App.4th at pp. 1245-1247.) Although an opening brief must "provide a summary of the significant facts limited to matters in the record," his opening brief is prolix, confusing, and ranges far afield of the issues

9

pertaining to section 664.6. (Rule 8.204(a)(2)(C); see *Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856; *Banning v. Newdow* (2004) 119 Cal.App.4th 438, 453, fn. 6.)

It is well established that "[i]n propria persona litigants are entitled to the same, but no greater, rights than represented litigants and are presumed to know the [procedural and court] rules." (*Wantuch v. Davis* (1995) 32 Cal.App.4th 786, 795.) "We are not bound to develop appellants' argument for them. [Citation.] The absence of cogent legal argument or citation to authority allows this court to treat the contentions as waived." (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830; see also *Dills v. Redwoods Associates, Ltd.* (1994) 28 Cal.App.4th 888, 890, fn. 1.)

B. Requirements for Enforceability of a Purported Settlement Agreement

In relevant part, the text of section 664.6 provides: "If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court . . . , for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement." This Agreement referenced the enforcement procedures of section 664.6.

A settlement is valid, binding, and enforceable under section 664.6 if the parties agreed to all material settlement terms. (*Hines v. Luke* (2008) 167 Cal.App.4th 1174, 1182-1183.) The role of the court in deciding these summary proceedings is to determine what terms the parties themselves have previously agreed upon, and not to create or

10

impose material terms. (*Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 810 (*Weddington*); *Bowers v. Raymond J. Lucia Companies, Inc.* (2012) 206 Cal.App.4th 724, 732.) "The court ruling on the motion may consider the parties' declarations and other evidence in deciding what terms the parties agreed to, and the court's factual findings in this regard are reviewed under the substantial evidence standard. [Citation.] If the court determines that the parties entered into an enforceable settlement, it should grant the motion and enter a formal judgment pursuant to the terms of the settlement." (*Hines v. Luke, supra*, at pp. 1182-1183; *Malouf Bros. v. Dixon* (1991) 230 Cal.App.3d 280, 283-284 [trial court has discretion to adjudicate existence of binding settlement terms upon declarations presented].)

Contract principles apply for analyzing the terms of such an agreement: "A settlement agreement is a contract, and the legal principles which apply to contracts generally apply to settlement contracts. [Citation.] An essential element of any contract is 'consent.' [Citations.] The 'consent' must be 'mutual.' [Citations.]" (*Weddington, supra*, 60 Cal.App.4th at pp. 811-812.) Further: " 'The existence of mutual consent is determined by objective rather than subjective criteria, the test being what the outward manifestations of consent would lead a reasonable person to believe.' [Citation.] Outward manifestations thus govern the finding of mutual consent required by Civil Code sections 1550, 1565 and 1580 for contract formation. [Citation.] . . . The parties' outward manifestations must show that the parties all agreed 'upon the same thing in the same sense.' [Citation.] If there is no evidence establishing a manifestation of assent to

11

the 'same thing' by both parties, then there is no mutual consent to contract and no contract formation." (*Weddington, supra*, at p. 811.)

### C. Ambiguous Term in the Agreement; Review

Since the trial court essentially took evidence from Alkasabi at the hearing, after having him sworn as a witness, extrinsic evidence was presented about the mutual understandings of the parties in entering into the Agreement. The tentative ruling noted that the term in the Agreement, "consideration equal to . . . $60,000" was arguably vague or ambiguous, and requested argument on the point. To the extent the Agreement contained ambiguous language, a de novo standard of review applies to the threshold determination of the ambiguity of its provisions. (*Winet v. Price* (1992) 4 Cal.App.4th 1159, 1165-1166 (*Winet*).) We think the trial court had a reasonable basis to determine that this language was ambiguous and to consider the extrinsic evidence offered.

When considering extrinsic evidence as a means of clarifying an ambiguous provision, the courts follow these steps: "The decision whether to admit parol evidence involves a two-step process. First, the court provisionally receives (without actually admitting) all credible evidence concerning the parties' intentions to determine 'ambiguity,' i.e., whether the language is 'reasonably susceptible' to the interpretation urged by a party. If in light of the extrinsic evidence the court decides the language is 'reasonably susceptible' to the interpretation urged, the extrinsic evidence is then admitted to aid in the second step—interpreting the contract." (*Winet, supra*, 4 Cal.App.4th at p. 1165.)

12

III

*ANALYSIS*

A. Procedural Arguments

Alkasabi argues several overlapping objections to the order and judgment confirming the Agreement. We first address his procedural objection that he was deprived of an evidentiary hearing. The record shows the trial court swore him in at the outset of the hearing on the enforceability of the Agreement, and heard his claims. In any event, the summary procedure of section 664.6 for determining the enforceability of a settlement allows the use of declarations and argument to the court. The trial court had before it declarations and lodged documents sufficient to present the relevant issues, and it followed the appropriate procedure here. (*Hines v. Luke, supra*, 167 Cal.App.4th at pp. 1182-1183.) Alkasabi does not discuss the reconsideration ruling and it need not be addressed here.

Alkasabi seems to seek reopening of the underlying dispute about Chandler's alleged breach of the exclusive listing agreement in 2010, and he proposes amendments to his pleadings and argues the amount of damages he still wants. He also relies on the language of the prior opinion in this case as somehow adjudicating his rights. None of those arguments is properly before this court. In our prior opinion, we only addressed specific anti-SLAPP issues, not the merits of the underlying case. (§ 425.16.) The only issues properly brought before the trial court in 2013, and the subjects of this appeal, concern the enforceability of the Agreement that addressed the settlement of that underlying dispute, according to section 664.6 procedures.

13

## B. Substantive Arguments

### 1. *Signatures and Revocation*

Alkasabi first attacks the existence of any settlement by pointing to the June 20 revocation by Chandler of its June 12 consent to the Agreement, even though Chandler again signed the Agreement June 24, after Alkasabi did so. An objective standard is used for determining whether mutual consent to material contract terms was reached, "the test being what the outward manifestations of consent would lead a reasonable person to believe." (*Weddington, supra*, 60 Cal.App.4th at p. 811.) The Agreement provided that it could be signed in counterpart.

Alkasabi, a sophisticated realtor with several professional degrees (including a J.D.), signed a copy of the Agreement after negotiating its terms, and he cannot properly claim surprise or a default from the manner in which the Agreement was still being finalized during the period when the parties were continuing to negotiate. He has not shown his offer to settle was withdrawn. When Chandler signed another copy of the Agreement's signature page, it completed the process of obtaining the consent of the parties, and this was not shown to exceed the terms of the Agreement.

### 2. *Definition of "Consideration"*

Alkasabi argues there was a failure of consideration for the Agreement and it should be rescinded because there was never a meeting of the minds or mutual consent to the material terms of the Agreement, on the meaning of the term "consideration." (*Weddington, supra*, 60 Cal.App.4th at pp. 810-811 [parties' outward manifestations must show that the parties all agreed 'upon the same thing in the same sense'].) He thus claims

Chandler committed fraud in the inducement to settle when it represented it would pay $60,000 net cash as "consideration," but it instead obtained the Coldwell Banker assigned judgment and applied the same $60,000 amount to that balance due, as performance in supplying "consideration." At argument before the trial court, Alkasabi objected that buying up another debt was somehow improper.

In support, Alkasabi mainly argues that there was an oral understanding at the settlement conference (presided over by Judge Nugent) that Alkasabi would be receiving $60,000 net cash proceeds out of the deal, possibly as a condition precedent to settlement. He cites to *In re Marriage of Assemi* (1994) 7 Cal.4th 896, 911 for the concept that a supervising judicial officer may question the parties regarding their understanding of terms in a settlement that was reached orally before the court. However, this was not an oral settlement arrived at in open court, and only a written settlement agreement exists. In any case, settlement negotiations are privileged and not admissible to show the negotiated subjects and disposition. (Evid. Code, §§ 1152, 1154.)

The language of the Agreement states that Chandler will supply "consideration equal to . . . $60,000," as payment in full "for any and all monies alleged to be due and owing as a result of the Dispute between the Parties." In relevant part, Civil Code section 1605 defines the term "consideration": "[a]ny benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled . . . as an inducement to the promisor, is a good consideration for a promise."

15

To the extent the trial court had to consider extrinsic evidence as a means of clarifying an ambiguous provision in the Agreement ("consideration equal to . . . $60,000"), it provisionally received Alkasabi's declaration and his sworn evidence on his intentions and interpretation of the term. The court made specific findings in the reporter's transcript that both parties had signed the same agreement, and the subjective, limited interpretation by Alkasabi that he was entitled to cash or "fresh money" was not a reasonable one. Rather, the term "consideration" was broad enough to encompass Chandler's reasonably objective interpretation. " 'The existence of mutual consent is determined by objective rather than subjective criteria, the test being what the outward manifestations of consent would lead a reasonable person to believe.' " (*Weddington, supra*, 60 Cal.App.4th at p. 811.)

Moreover, the assignment and lien procedure used here has not been shown to be defective or forbidden by the Agreement. Under section 708.410, subdivision (a)(2), a judgment creditor who has a money judgment against a judgment debtor who is a party to a (different) pending action may obtain a lien, to the extent required to satisfy that judgment creditor's money judgment, on the rights of the judgment debtor "to money or property under any judgment subsequently procured in the action or proceeding." Section 680.240 defines a "judgment creditor" as "the person in whose favor a judgment is rendered or, if there is an assignee of record, [meaning] the assignee of record . . . ."

"Assignment of a judgment constitutes an assignment of the debt upon which it was based." (1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 734, p. 817.) Under Civil Code section 1459, an assignment "merely transfers the interest of the

16

assignor.  The assignee 'stands in the shoes' of the assignor, taking his or her rights and remedies, subject to any *defenses* that the *obligor* has against the assignor prior to notice of the assignment."  (See 1 Witkin*, supra*, Summary of Cal. Law, § 735, p. 819.)  The record shows that in the Seahaus Case, Alkasabi independently owed a debt to Coldwell Banker, apart from his dealings with Chandler.  It is not now before us whether both of the Coldwell Banker abstracts of judgment (recorded Feb. 15, 2008 and Aug. 1, 2011) are enforceable, in view of the concluding language of the November 23, 2009 amended judgment that states one final judgment shall incorporate all prior awards and judgments. The main point here is that nothing in the Agreement prevented Chandler from obtaining the assignment of the asset of another's final judgment.

Thus, the trial court was justified in treating the assignment of the existing Coldwell Banker judgment as a separate contractual matter from the underlying contractual settlement shown in the Agreement.  When Chandler applied the disputed $60,000 amount to another, existing debt of Alkasabi (the assigned judgment), its activity did not extinguish the effect of that amount as "consideration."  Chandler followed the lien procedure of section 708.410, subdivision (a)(2) to cover the $60,000 amount of consideration it was providing.

Also, Chandler supplied its own consideration (incurred prejudice) when it gave up its right to enforce a monetary sanctions award or to pursue its cross-complaint against Alkasabi.  (Civ. Code, § 1605 ["any prejudice suffered, or agreed to be suffered, by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise."].)

17

The trial court's construction of the Agreement will be upheld on appeal, so long as it is reasonable and supported by substantial evidence. (*Winet, supra*, 4 Cal.App.4th at p. 1159, 1166; *Kuhn v. Department of General Services* (1994) 22 Cal.App.4th 1627, 1632-1633 [" '[I]f the word "substantial" [is to mean] anything at all, it clearly implies that such evidence must be of ponderable legal significance. Obviously the word cannot be deemed synonymous with "any" evidence. It must be reasonable . . . , credible, and of solid value . . . .' ".].) The trial court had a reasonable basis to accept the meaning urged by Chandler. It expressly ruled that the cited language was not reasonably susceptible to Alkasabi's interpretation. (*Winet, supra*, at p. 1165.) Its factual determinations are supported by substantial evidence, and the related legal rulings are appropriate. (*Weddington, supra*, 60 Cal.App.4th at p. 815.)

Moreover, when Alkasabi points out portions of the evidence that might support his view of things, it is not equivalent to demonstrating that there was no substantial evidence in support of the trial court's conclusions that sufficient consideration was provided to him in return for his promises and performance. Alkasabi has not shown that the assignment of the other judgment was somehow improper or unenforceable. Instead, he vaguely contends it was somehow unfair for Chandler to obtain an assignment of the existing Coldwell Banker judgment, but he has waived such an appellate approach. " 'When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived.' " (*Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862; *In re Marriage of Falcone & Fyke, supra*, 164 Cal.App.4th 814, 830.)

### 3. *Third Party Beneficiary Clause in Agreement*

Paragraph 11 of the Agreement provides that the named parties to the agreement are bound by it, and there are no third party beneficiaries of it. Alkasabi points to that term of the Agreement, and seems to construe Chandler's obtaining of the assigned judgment as the same as Chandler's granting benefits to a third party (the assignor Coldwell Banker). However, the concept of a contractual third party beneficiary is different from a contractual assignment. There are two major types of contractual third party beneficiaries, an intended beneficiary or an incidental beneficiary. (1 Witkin, Summary of Cal. Law, *supra*, Contracts, § 687, p. 773.) This Agreement does not demonstrate any intention by the parties to create a right to performance in any third party beneficiary, but instead it clearly states the opposite. The assignment of another judgment was a separate contractual transaction and did not violate the terms of the Agreement, even combined with the lien procedure.

In conclusion, Alkasabi has not shown how or why the trial court's conclusions that he showed objectively ascertainable consent to the material terms of the Agreement are lacking in any substantial evidence support. (*Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 632.)

Although Chandler's respondent's brief seeks an award of attorney fees and costs for settlement enforcement purposes, we decline to decide such a request, which could properly be brought before the trial court.

19

DISPOSITION

Judgment and underlying orders are affirmed.  The ordinary costs on appeal are awarded to Respondent.

HUFFMAN, J.

WE CONCUR:

BENKE, Acting P. J.

NARES, J.