*536
 
 Opinion
 

 POTTER, Acting P. J.
 

 Both Arthur Trantafello (hereinafter Husband) and Dorothy Trantafello (hereinafter Wife) appeal from portions of a judgment in Family Law Act proceedings. Wife, who was respondent in Husband’s petition for dissolution, filed a response in which she sought a declaration of nullity pursuant to Civil Code section 4425, subdivision (d) (fraud). The judgment granted Wife a “Judgment of Nullity,” determined the community or separate property status of numerous disputed items upon which specific evaluations were placed, awarded certain assets to each of the parties (in some instances with obligations to pay the other party for his share of the community interest therein), but did not make any division of the 19 items of community personal property or purport to equalize the respective party’s share of community assets.
 

 Since only specific portions of the judgment are challenged, much of the evidence presented in the trial court is not relevant to this appeal. The principal asset in dispute was the family home acquired during the marriage, the title to which was taken in joint tenancy. There were conflicting appraisals of its value, which was considerable.
 
 [1]
 
 In his trial brief, Husband asserted that of a claimed equity of approximately $23,700, he was “entitled to 75 percent of the equity” and to reimbursement for the difference between $11,180 made in postseparation payments and a claimed reasonable rental value of $300 per month, since he had had possession during the separation period. Wife claimed that the entire equity was community and should be equally divided.
 

 In support of his claim, Husband testified that, the entire down payment of $6,700 came from his separate property. His ability to trace these funds through a joint account was called into question by cross-examination and Wife testified that she was coowner of a former home which was sold to procure $2,500 of the down payment. This conflict in the evidence was resolved by the court in favor of Husband. The court found that the down payment was made from Husband’s separate funds.
 

 Husband’s testimony with respect to the title was that “it is in joint tenancy,” but that he had not learned that fact until divorce proceedings
 
 *537
 
 were commenced. Though he gave no reason for his failure to do so, he claimed that he had not read all the documents when he signed the escrow papers, and that in any event he did not know the meaning of joint tenancy. Husband’s testimony was specific that there was no discussion with Wife concerning the ownership of the house at the time it was acquired. Husband denied he had told Wife he was “giving to her any portion, as a gift, of the home,” but nothing in his testimony suggested that she was told that no gift to her or to the community was being made. As a matter of fact, Husband did not purport to testify what his intent was; he did not deny that he intended a gift of the down payment to the community. Wife did not testify at all with respect to the subject matter of discussions concerning the title to the family residence or the intent or lack of intent to make gifts to her or to the community.
 

 The court found (in addition to the fact that the down payment came from Husband’s separate property) that: “5. The title to the home was placed in both names because of an instruction by a broker who said that’s the way it’s done in California. Respondent [Wife] was aware that the property was to remain the separate property of petitioner [Husband].”
 

 From this, the court concluded that the family residence was “the sole and separate property of the petitioner, Arthur M. Trantafello,” and in the judgment it was confirmed to him as his sole and separate property.
 

 Another item in dispute was a balance of $3,172.52 in an account in both parties’ names in the L.A. Baptist Teachers’ Credit Union at the time of separation. Husband testified that he did not tell Wife she could keep the money for any purpose. She, however, testified that when she left the family home in June 1975 at Husband’s insistence (he “wanted the house and would I please leave”), she took nothing with her but her personal effects. At that time, they discussed how she was going to live in view of the fact that she had finished a year of teaching but had no summer employment and consequently no income, and he told her “that the money in the L.A. Baptist Credit Union would be used for living expenses.” Wife further testified that she so used these funds. On this issue the court found that this account “was given to respondent [Wife] at separation for living expenses” and concluded that said account was the separate property of Wife. The judgment awarded this account to Wife.
 

 Another disputed item was a Ford Courier pick-up truck. The testimony was to the effect that this truck was purchased after marriage
 
 *538
 
 with a $500 down payment from a joint bank account and that during the marriage the payments made on it were from a joint bank account. The court found that the Courier was purchased during marriage, that the first seven payments were made from community property, and that the approximately 26 payments made since the date of separation were made by Husband. Nonetheless, the court concluded that “[t]he 1973 Ford Courier is respondent’s [Wife’s] separate property.”
 

 Two notices of appeal were filed. Wife’s notice of appeal specified that her appeal was only from that portion of the judgment confirming that the family residence was Husband’s sole and separate property, that portion failing to award to either of the parties the 18 items of tangible personal property which were found to be community, and that portion of the judgment failing to dispose of the $1,200 in the joint checking account found to be community.
 

 Husband’s notice of appeal was likewise limited. It challenged that portion of the judgment awarding the 1973 Ford Courier to Wife as her sole and separate property and that portion of the judgment awarding her the funds in the L.A. Baptist Teachers’ Credit Union as her separate property.
 

 Contentions
 

 Wife contends that (1) there was no evidence to support the court’s finding that the family residence was the separate property of Husband nor that Husband was entitled to reimbursement for his separate funds used in the down payment, (2) the judgment erroneously failed to make an equal division of the community property, and (3) the evidence supports the finding that the L.A. Baptist Teachers’ Credit Union account was her separate property.
 

 Husband contends that (1) the evidence supports the finding that the residence is his separate property, (2) in any event, if it is community, he is entitled to reimbursement for $6,290 of his separate funds used for the down payment, (3) no evidence supports the award to Wife of the L.A. Baptist Teachers’ Credit Union account as her separate property, (4) no evidence supports the award of the Ford Courier truck to Wife as her separate property, and (5) if the community property is to be divided, account must be taken of the community debts outstanding against such property.
 

 
 *539
 
 In response to Husband’s contentions, Wife concedes that the Ford Courier is community property but contends that the trial court’s failure to take into account community obligations is not before the court on this appeal.
 

 Discussion
 

 Summary
 

 The uncontradicted evidence showed that the entire equity in the residence was community property. Such evidence failed to rebut the presumption that it was community property, which arose from the fact that title was taken in joint tenancy. In the absence of any evidence of an agreement that Husband was entitled to reimbursement for his separate funds used to acquire such community asset, Husband is not entitled to reimbursement. The finding that the credit union account was given to Wife is supported by substantial evidence. However, as Wife concedes, there is no support for the finding that the Ford Courier truck is her separate property. Upon remand, the court must both evaluate and divide the community property. In so doing, assets as against which there are obligations must necessarily be valued on the basis of the community equity.
 

 The Uncontradicted Evidence Required the Finding That the Residence Was Community Property
 

 The uncontradicted evidence showed that title to the residence was taken in joint tenancy during the marriage. Consequently, for the purpose of division upon dissolution of marriage, it was presumptively community property. Civil Code section 5110 provides in this respect: “When a single-family residence of a husband and wife is acquired by them during marriage as joint tenants, for the purpose of the division of such property upon dissolution of marriage or legal separation only, the presumption is that such single-family residence is the community property of said husband and wife.”
 

 In this case, the marriage was found voidable and declared nullified rather than dissolved. However, Civil Code section 4452 provides that in such case, “if the division of property is in issue,” the court “shall divide, in accordance with Section 4800, that property acquired during the union which would have been community property
 
 *540
 
 or quasi-community property if the union had not been void or voidable,” when the court finds that either party believed in good faith that the marriage was valid. There is no express finding of good faith in this case. However, the fact that the court declared certain personal property to be community property clearly shows that it made an implied finding of good faith, and there is nothing in the evidence to suggest the contrary.
 

 Since the presumption of Civil Code section 5110 was applicable, the question is whether there was any evidence to rebut that presumption. In
 
 In re Marriage of Bjornestad
 
 (1974) 38 Cal.App.3d 801, 803 [113 Cal.Rptr. 576], Division Two of this district held that the presumption created by Civil Code section 5110 is rebuttable only by evidence of “ ‘ “intention to make or not to make a gift communicated by either party to the other.” ’ ” In that case, the family residence was purchased during marriage by a down payment of $5,850, $5,400 of which came from the separate funds of the wife, and $450 from the separate funds of the husband. It was stipulated “ ‘ “[a]t the time the parties acquired the said family residence, and at all times thereafter, there was no intention to make or not to make a gift communicated by either party to the other.” ’ ”
 
 (Ibid.)
 
 It was also stipulated that the husband’s “ ‘ “contention of gift arises only from a contention that the property is joint tenancy and therefore a gift of separate property is to be presumed.” ’ ”
 
 (Ibid.)
 
 Apparently there was also no dispute about the ability of the parties to trace the separate funds which were used for the down payment “with arithmetical certainty.”
 
 (Id.,
 
 at p. 806.) The trial court found that the residence was “held as community property ‘. . . to the extent that the value thereof exceeded . . .’ their respective separate contributions.”
 
 (Id.,
 
 at p. 803.) This determination was affirmed. The case, therefore, holds that in the absence of any communicated intention to the contrary, a residence acquired during marriage by joint tenancy deed is community property, regardless of the fact that the source of the funds which went into its purchase are clearly traceable to the separate property of one or more of the spouses.
 

 The holding in this respect is consistent with prior decisions limiting the evidence competent to overcome the presumptions created by joint tenancy deeds.
 

 In
 
 Machado
 
 v.
 
 Machado
 
 (1962) 58 Cal.2d 501 [25 Cal.Rptr. 87, 375 P.2d 55], a family residence was purchased with funds which were partly community and partly separate property of the husband. In affirming the
 
 *541
 
 trial court’s determination that the home was held in joint tenancy,
 
 [2]
 
 the court said
 
 (id.,
 
 atpp. 505-506):
 

 “Each party testified that when the family residence was purchased they did not instruct the bank handling the transaction to put the deed in joint tenancy. Plaintiff testified that she went to the bank and signed papers when defendant told her to do so. Defendant testified that he signed papers at the bank at a different time, that he did not see plaintiff’s name on the deed, and that he did not intend to give her an interest in the house.
 

 “Although a joint tenancy deed is not conclusive as to the character of real property, it creates a rebuttable presumption that it is held in joint tenancy.
 
 The presumption created by the deed cannot be overcome by testimony of the hidden intentions of one of the parties, but only by evidence tending to prove a common understanding or an agreement
 
 that the character of the property was to be other than joint tenancy. Since there was no evidence of a common understanding or an agreement the presumption was not overcome.
 
 (Gudelj
 
 v.
 
 Gudelj,
 
 41 Cal.2d 202, 212-213 [259 P.2d 656];
 
 Socol
 
 v.
 
 King,
 
 36 Cal.2d 342, 345-346 [223 P.2d 627].)” (Italics added.)
 

 In
 
 In re Marriage of Frapwell
 
 (1975) 49 Cal.App.3d 597 [122 Cal.Rptr. 718], a husband changed two separate savings accounts to joint accounts with his wife. He testified that “he did so only to avoid probate, and no gift was intended by him prior to his death.”
 
 (Id.,
 
 at p. 601.) In reversing a judgment determining that the accounts were the separate property of the husband, the court said
 
 (id.,
 
 at pp. 601-602): “Whether evidence is sufficient to overcome the inferences arising from a joint tenancy deed to husband and wife is a question of fact; the form of the instrument is not conclusive and parol evidence is admissible to establish absence of intention to make a gift.
 
 (Gudelj
 
 v.
 
 Gudelj
 
 (1953)
 
 supra,
 
 41 Cal.2d at p. 204; see also
 
 Cash
 
 v.
 
 Cash
 
 (1952) 110 Cal.App.2d 534 [243 P.2d 115].) While it has been said that husband’s intention is controlling (see
 
 DeBoer
 
 v.
 
 DeBoer
 
 (1952)
 
 supra,
 
 111 Cal.App.2d 500 [244 P.2d 953]), and the husband did testify that he had no intent to make a gift, still,
 
 ‘[t]he presumption created by the deed cannot be overcome by testimony of the hidden intentions of one of the parties, but only by evidence tending to prove a common understanding or an agreement that the character of the property
 
 
 *542
 

 was to be other than joint tenancy.’ (Machado
 
 v.
 
 Machado
 
 (1962) 58 Cal.2d 501, 506 [25 Cal.Rptr. 87, 375 P.2d 55].)” (Italics added.)
 

 There was no evidence in this case of any common understanding that the joint tenancy deed to the family home was not to have the legal effect given it by Civil Code section 5110. Only Husband testified in this respect and his testimony was unequivocal; there simply was no discussion whatever between Husband and Wife concerning the title to the house. The fact that Husband had no understanding of the fact or the effect of the fact that the title was joint tenancy is irrelevant. As the court pointed out in
 
 Bjornestad,
 
 the legislative history of Civil Code section 5110 shows that a premise upon which it was enacted was that (38 Cal.App.3d at p. 805): “ ‘. . . [Hjusbands and wives take property in joint tenancy without legal counsel but primarily because deeds prepared by real estate brokers, escrow companies, and by title companies are usually presented to the parties in joint tenancy form. . . . they don’t know what joint tenancy is, . . . they think it is community property, and then find out upon death or divorce that they didn’t have what they thought they had all along and instead have something else which isn’t what they intended.’ ”
 

 We, therefore, conclude that the record is devoid of any evidence on which the court could find that the residence of the parties was not community property.
 

 There Was No Evidence From Which Husband Could Be Found Entitled to Reimbursement of Separate Funds Invested in the Residence
 

 Upon conflicting evidence, the court found that Husband had traced some $6,700 of his separate funds into the down payment for the family residence. Husband claims that on this basis alone, even if the property is community, he is entitled to reimbursement. In so contending, he ignores the rule stated by our Supreme Court in
 
 See
 
 v.
 
 See
 
 (1966) 64 Cal.2d 778, 785-786 [51 Cal.Rptr. 888, 415 P.2d 776], where the court said: “The basic rule is that the party who uses his separate property for community purposes is entitled to reimbursement from the community or separate property of the other only if there is an agreement between the parties to that effect. To the extent that they conflict with this rule
 
 Mears
 
 v.
 
 Mears, supra,
 
 180 Cal.App.2d 484 [4 Cal.Rptr. 613];
 
 Kenney
 
 v.
 
 Kenney, supra,
 
 128 Cal.App.2d 128 [274 P.2d 951];
 
 Thomasset
 
 v.
 
 Thomasset, supra,
 
 
 *543
 
 122 Cal.App.2d 116 [264 P.2d 626]; and
 
 Hill
 
 v.
 
 Hill,
 
 82 Cal.App.2d 682 [187 P.2d 28], are disapproved.”
 

 More recently, in
 
 In re Marriage of Epstein
 
 (1979) 24 Cal.3d 76, 82 [154 Cal.Rptr. 413, 592 P.2d 1165], our Supreme Court reaffirmed this rule, stating: “Our decision in
 
 See
 
 v.
 
 See
 
 (1966) 64 Cal.2d 778 [51 Cal.Rptr. 888, 415 P.2d 776] established a presumption that, unless an agreement between the parties specifies that the contributing party be reimbursed, a party who utilizes his separate property for community purposes intends a gift to the community.”
 

 The application of this principle, when separate funds are used to make the down payment on property which is acquired as community property, is made clear by the decision of
 
 In re Marriage of Smith
 
 (1978) 79 Cal.App.3d 725 [145 Cal.Rptr. 205]. In that case, the wife expended $7,556 of her separate funds to defray the cost of construction of a swimming pool added to the family residence and paid $1,500 from her separate funds as the down payment on another piece of real property. The trial court found both properties were community and that any contributions toward their cost by the wife were a gift to the community. Upholding this finding, the court said
 
 {id.,
 
 at pp. 743, 746):
 

 “Neither was wife entitled to reimbursement. With respect to transactions prior to separation, it is well settled that a spouse who uses his or her separate property for community purposes is entitled to reimbursement from the community or separate property of the other spouse only if there is an agreement between the parties to that effect. (E.g.,
 
 Weinberg
 
 v.
 
 Weinberg, 61
 
 Cal.2d 557, 570 [63 Cal.Rptr. 13, 432 P.2d 709];
 
 See
 
 v.
 
 See,
 
 64 Cal.2d 778, 784-785 [51 Cal.Rptr. 888, 415 P.2d 776];
 
 In re Marriage of Cosgrove,
 
 27 Cal.App.3d 424, 430-431 [103 Cal.Rptr. 733].) There is no evidence whatever of any agreement for wife’s reimbursement, and the court’s finding that wife intended these expenditures of her separate funds to be gifts to the community is entirely inconsistent with the existence of such an agreement.
 

 “The rule denying reimbursement in the absence of an agreement therefor is based largely on the presumption the paying spouse intended a gift. (See
 
 See
 
 v.
 
 See, supra,
 
 64 Cal.2d at p. 785; cf.
 
 Dunn
 
 v.
 
 Mullan,
 
 211 Cal. 583, 589-590 [296 P. 604, 77 A.L.R. 1015];
 
 Ives
 
 v.
 
 Connacher, supra,
 
 162 Cal. at p. 177 [121 P. 394].) This presumption is, in turn, largely based
 
 *544
 
 no doubt upon the natural feelings of mutual affection and generosity presumably attending the marital state.”
 

 The decision in
 
 Smith
 
 is expressly adopted as the view of our Supreme Court in
 
 In re Marriage of Epstein, supra,
 
 24 Cal.3d at page 84.
 

 The rule of the foregoing cases is that the use of funds which are shown to be the separate property of one of the spouses for the purpose of making a down payment on property acquired by a conveyance making it community property is a gift to the community unless there is proof of an agreement between the parties to the contrary. Obviously, then, mere tracing of the funds establishing their separate character does not under such circumstances suffice to prove a right to reimbursement. As support for his contrary contention, Husband relies upon the decisions in
 
 In re Marriage of Mix
 
 (1975) 14 Cal.3d 604 [122 Cal.Rptr. 79, 536 P.2d 474],
 
 In re Marriage of Bjornestad, supra,
 
 38 Cal.App.3d 801, and
 
 In re Marriage of Aufmuth
 
 (1979) 89 Cal.App.3d 446 [152 Cal.Rptr. 668]. These cases do not support his position.
 

 Mix
 
 simply held that a wife’s separate funds did not lose their character when commingled with community funds, and when specific property was purchased in the wife’s name with funds traced through a commingled account, proof of her intent to purchase the property as separate property supported the trial court’s finding that it was separate property. Proof of use of separate funds and of one party’s intent was held sufficient to overcome the general “presumption that all property acquired by either spouse during the marriage is community property.” (14 Cal.3d at p. 611.) The court did not deal with the sufficiency of such evidence to overcome the effects of acquisition of title in the names of both spouses in joint tenancy or as husband and wife. (Civ. Code, § 5110.)
 

 Bjornestad
 
 did affirm a trial court disposition allowing reimbursement of separate property contributed by the spouses for use as a down payment to acquire a joint tenancy residence, upon a finding that the spouses intended that the property be held as community only to the extent that its value exceeded their respective contributions. The opinion, however, did not discuss the sufficiency of the evidence to support that finding. Apparently, the parties were so preoccupied with the issue whether the property was community or joint tenancy that they simply failed to present any question to the appellate court as to the evidence necessary to support a right of reimbursement where a spouse has contributed separate funds to the cost of acquisition of community assets.
 

 
 *545
 

 Aufmuth
 
 sustained a wife’s separate interest in a family residence as to which title “was taken in both names and as community property” (89 Cal.App.3d at p. 453) where the source of the $16,500 down payment “was a savings account which was held in trust for wife by her parents in another state”
 
 (id.,
 
 at p. 455) and “[t]here was testimony that at the time these funds were used for the down payment there was no intent by the parents or wife to make a gift to the community”
 
 (ibid.).
 
 Upholding the trial court’s finding, the court said
 
 (ibid.):
 
 “At that time [of purchase], and at all times prior to the commencement of the dissolution proceeding, neither party communicated with the other as to the property status of the funds used. Thus, although title to the property was taken in both names as community property, there is substantial evidence to support the trial court’s finding that the down payment was and continued to be a separate property interest held by wife in the residence. This finding is supported on the basis of an adequate tracing of the wife’s separate property. It need not be based on any understanding between the parties as to the separate property character of the down payment.
 
 (In re Marriage of Mix, supra,
 
 14 Cal.3d 604 atp. 614.)”
 

 It is apparent that the trust funds used for the down payment were not at the wife’s disposal. The intent of her parents, as trustees, was not governed by a presumption of intended gift which is “based no doubt upon the natural feelings of mutual affection and generosity presumably attending the marital state.”
 
 (In re Marriage of Smith, supra,
 
 79 Cal.App.3d at p. 746.) Thus, the court’s statement that an adequate tracing of the wife’s separate property supported the finding without proof of any understanding between the parties cannot be construed as applicable where the party contributing the funds is one of the marital partners.
 

 Consequently, Husband’s authorities do not support his position. The rule remains as stated in
 
 Smith
 
 and Husband’s right to reimbursement cannot be based solely upon proof that his separate funds were employed to make the down payment upon the family residence which was acquired as community property. To be entitled to reimbursement, he was required to show that there was a mutual agreement between himself and Wife to preserve the separate property status of the contributed funds.
 

 Husband made no attempt to show any such agreement. He conceded that there was no discussion of the subject between them at all and did
 
 *546
 
 not even claim a subjective intent on his part not to make a gift.
 
 [3]
 
 His contribution of his separate funds as a down payment on the home must, therefore, be deemed a gift to the community.
 

 Husband’s payment of the loan installments, subsequent to separation, could require a different result as to them, if there were no offsetting factors. In
 
 In re Marriage of Smith, supra,
 
 79 Cal.App.3d at page 746, the court observed: “When the parties have separated in anticipation of dissolution of the marriage, the rational basis for presuming an intention on the part of the paying spouse to make a gift is gone.”
 

 Thus, Husband’s use of his separate funds to make the postseparation loan payments on the home would normally be reimbursable. The evidence is, however, uncontradicted that he continued to occupy the home, to the exclusion of Wife, during the entire period such payments were made. The only evidence concerning the reasonable rental value of the home was Wife’s testimony to the effect that such rental value was equal to or more than the loan payments. Moreover, Husband makes no argument on this appeal that he is entitled to reimbursement for these postseparation payments.
 

 Consequently, we conclude that the entire equity in the residence is community property subject to division between Husband and Wife.
 

 The Finding re the Credit Union Account Was Supported by Substantial Evidence
 

 What the court really found in respect of the balance in the L.A. Baptist Teachers’ Credit Union was that Wife, who had expended it for living expenses, was not accountable to the community. The basis of this finding was the evidence that Husband had agreed that Wife, who was being asked to vacate the family home and had no income, was entitled to expend it for her living expenses. Findings of a trial court as to the separate or community character of assets are binding on the appellate court if supported by substantial evidence.
 
 (Beam
 
 v.
 
 Bank of America
 
 (1971) 6 Cal.3d 12, 25 [98 Cal.Rptr. 137, 490 P.2d 257];
 
 In re Marriage of Wall
 
 (1973) 30 Cal.App.3d 1042, 1048 [106 Cal.Rptr. 690].)
 

 
 *547
 
 An agreement between a husband and wife that community property may become the separate property of either of them clearly is effective to accomplish a change in the status of the property. In
 
 Odone
 
 v.
 
 Marzocchi
 
 (1949) 34 Cal.2d 431, 435 [211 P.2d 297, 212 P.2d 233, 17 A.L.R.2d 1109], the court said; “Although the property was undoubtedly purchased with the community funds of the parties, a husband and wife may agree between themselves that the status of such property may be changed so as to become the separate property of either of them, or the husband may make a gift of his share of the community to his wife.”
 

 In view of the circumstances, when Husband advised Wife that the credit union account was to be used for her living expenses, the only reasonable inference was that she would not be obligated to reimburse the community for such expenditure. In exchange, Husband was permitted exclusively to occupy the family home and was excused from contributing to Wife’s support. The trial court’s finding is therefore fully supported by the reasonable inferences from the testimony.
 

 The Ford Courier Truck Is Community Property
 

 Since Wife concedes the impropriety of the finding that the Ford Courier Truck is her separate property, it is apparent that the judgment must be modified insofar as it determines that this item of personal property is Wife’s separate property.
 

 The Judgment Must Equally Divide the Community Assets
 

 The mandate of Civil Code section 4800 clearly requires that the value of the community assets be ascertained and that the assets be equally divided. To do this, it will, of course, be necessaiy to determine the value of the residence, over and above the encumbrance against it. In view of the reclassification of the Ford Courier, its value will need to be ascertained and appropriate consideration given to Husband’s postseparation payments on the balance of the purchase price. Also, some disposition of the 18 items of tangible personal property and the balance in the joint checking account is required. So far as the former items are concerned, the failure of the original findings to determine the amount of any community obligation outstanding against them does not justify treating the valuations found.by the court as net valuations. Before either party may be charged the listed value for any such item distributed,
 
 *548
 
 provision must be made for the cost of acquisition which remained to be defrayed.
 

 Disposition
 

 The judgment is reversed insofar as it (1) confirms as Husband’s sole and separate property the real property comprising the family residence, and (2) awards the 1973 Ford Courier Truck to Wife as her sole and separate property; the remaining determinations are affirmed, and the cause is remanded to the trial court for further proceedings to value and to divide the community property in accordance with the views above expressed. Costs on appeal are awarded to Wife.
 

 Cobey, J., and Allport, J., concurred.
 

 The petition of appellant husband for a hearing by the Supreme Court was denied August 22, 1979.
 

 [1]
 

 The court did not find the value of the home since it was determined to be Husband’s separate property. It is apparent, however, that there was substantial equity since the appraisals ran from a high of $72,000 to a low of $61,000 and the outstanding encumbrance was approximately $37,000.
 

 [2]
 

 This case was decided before the presumption now found in Civil Code section 5110 was added to Civil Code section 164, in 1965.
 

 [3]
 

 By so noting, we do not mean to imply that such an intent, uncommunicated to Wife, would be competent evidence of an agreement.