[Civ. No. 46547. First Dist., Div. Three. June 1, 1981.]

In re the Marriage of SANDY and JOHN PETER CADEMARTORI.
SANDY CADEMARTORI, Appellant, v.
JOHN PETER CADEMARTORI, Respondent.

COUNSEL

John E. Miller and Mary Ann Grilli for Appellant.

Rudolph G. Kraft, Jr., and Vivian Lynn Holley for Respondent.

OPINION

SCOTT, Acting P. J.—Appellant Sandy Cademartori appeals from that portion of a judgment of dissolution that awards certain property ac-

quired during the marriage to respondent John Cademartori as his separate property. The parties were married on December 28, 1963. They separated September 15, 1975, and were granted an interlocutory dissolution of marriage on June 19, 1978.

In 1966 husband sold some separate real property he owned for $70,799.84. While investigating other property in which to invest the sale proceeds, husband put the money into 90-day certificates of deposit (C.D.s), under both his and wife's names. After principal and interest had "rolled over" three times, husband and wife bought a commercial warehouse, the subject matter of this appeal. The down payment of $72,470 was supplied by the C.D.s plus their accrued interest, which had been cashed and placed in husband and wife's joint checking account shortly before the purchase. The remainder of the purchase price was financed through a $93,000 bank loan. The grant deed for the property described the grantees, to wit: "John P. Cadematori and Sandy Cadematori, his wife." The form of the title was never discussed between husband and wife, and they never made any agreement, written or oral, regarding the form of title. The loan was repaid by monthly rental income from the property, which exceeded the monthly loan payment. This excess was deposited in John and Sandy's joint bank account No. 04-11087-0, at the Bank of Tokyo First California Bank.

The trial court concluded that husband intended no gift to wife when he took title in both their names and that the warehouse and the related bank account were husband's separate property. The trial court also concluded that husband's tracing the source of the down payment to his separate property was sufficient to overcome the presumption of Civil Code section 5110 that the property was community.

■ The sole question before us is what evidence is required to rebut Civil Code section 5110, which states that property acquired during marriage by spouses through an instrument describing them as husband and wife is community property. There are four presumptions in section 5110, the pertinent part of which reads as follows: "Except as provided in Sections 5107, 5108, and 5109, [1st presumption] all real property situated in this state and all personal property wherever situated acquired during the marriage by a married person while domiciled in this state, and property held in trust pursuant to Section 5113.5, is community property; [2d presumption] but whenever any real or personal property, or any interest therein or encumbrance thereon, is acquired prior to January 1, 1975, by a married woman by an instrument in

writing, the presumption is that the same is her separate property, and if so acquired by such married woman and any other person the presumption is that she takes the part acquired by her, as tenant in common, unless a different intention is expressed in the instrument; [3d presumption] except, that when any of such property is acquired by husband and wife by an instrument in which they are described as husband and wife, unless a different intention is expressed in the instrument, the presumption is that such property is the community property of the husband and wife. [4th presumption] When a single-family residence of a husband and wife is acquired by them during marriage as joint tenants, for the purpose of the division of such property upon dissolution of marriage or legal separation only, the presumption is that such single-family residence is the community property of the husband and wife."

The first or "general" presumption of community property may be overcome by tracing the source of funds used to acquire the property to separate property. (See *In re Marriage of Mix* (1975) 14 Cal.3d 604, 608-612 [122 Cal.Rptr. 79, 536 P.2d 479]; *Estate of Murphy* (1976) 15 Cal.3d 907, 917-919 [126 Cal.Rptr. 820, 544 P.2d 956].) Respondent urges that tracing is all that is needed to rebut the third presumption as well; appellant argues that evidence of a spousal agreement to maintain separate property is necessary. These contentions must be evaluated in light of *In re Marriage of Lucas* (1980) 27 Cal.3d 808 [166 Cal.Rptr. 853, 614 P.2d 285], decided after the trial in this case, and which considered the presumptions in section 5110.

*Lucas* involved, inter alia, the disposition of the single-family residence of a husband and wife acquired by them during marriage in *joint tenancy*. The fourth (or "single-family residence") presumption of section 5110 requires that "upon dissolution of marriage or legal separation only," such a residence held in joint tenancy is presumed to be community property. In *Lucas* the residence was paid for in part with separate, in part with community, funds. The trial court found that by virtue of tracing her down payment and subsequent home improvement financing back to a separate property source, Mrs. Lucas rebutted the section 5110 presumption, and had a separate interest in the home. The trial court also found that there was no evidence of an understanding or agreement between the Lucases regarding any separate interests in the home. The Supreme Court reversed, stating that the "single-family residence" presumption could be rebutted only by evi-

dence of a prior agreement between the spouses to maintain any separate property interests.

The court noted that the Courts of Appeal had taken conflicting approaches to determining property interests of spouses in residences purchased with both separate and community funds. In resolving this conflict, the court analyzed the underlying rationale of the "single-family residence" presumption. The court cited prior case law allowing the form of a joint tenancy title to be overcome only by "evidence of an agreement or understanding between the parties that the interests were to be otherwise." (*Lucas, supra*, 27 Cal.3d at p. 813.) Mere evidence of tracing to separate property sources, or of "hidden intentions" to retain separate interests was inadequate to overcome the form of the title. Unfortunately, use of the joint tenancy title created problems among spouses when they divorced. Without evidence of a common agreement or understanding, courts could not award a home to "the wife as a family residence for her and the children." (*Id.*, at p. 814.) Furthermore, spouses often take property in joint tenancy primarily because deeds are presented to them in that form. Thus, they often take the property without understanding joint tenancy, or in the belief that it is community property, only to find out upon death or divorce that what they have is not what they wanted. To remedy this the Legislature added the "single-family residence" presumption to then Civil Code section 164 (since repealed and replaced by the nearly identical § 5110).

Following this historical background of problems raised by joint tenancy deeds, the court then broadly declared that an indication of *any* specific form of title in the conveyance was to be distinguished from the "general presumption" of section 5110: "The presumption arising from the *form of title* is to be distinguished from the general presumption set forth in Civil Code section 5110 that property acquired during marriage is community property. It is the *affirmative act of specifying a form of ownership* in the conveyance of title that removes such property from the more general presumption. (See *Socol* v. *King* [1950] 36 Cal.2d [342] at p. 346 [209 P.2d 577].) It is because of this *express designation of ownership* that a greater showing is necessary to overcome the presumption arising therefrom than is necessary to overcome the more general presumption that property acquired during marriage is community property. In the latter situation, *where there is no written indication of ownership interests as between the spouses*, the general presumption of community property may be overcome simply by tracing the source of funds used to acquire the property to separate property.

[Citations.]" (*Lucas, supra*, 27 Cal.3d at pp. 814-815, italics added.) By this language the court seems to include *both* "husband and wife" and the "single-family residence" presumptions of section 5110, because both are based on the form of title. That this was intentional becomes apparent in the next paragraph of the opinion: "The rule requiring an understanding or agreement comes into play *when the issue is whether the presumption arising from the form of title has been overcome.* It is supported by sound policy considerations, and we decline to depart from it. To allow a lesser showing could result in unfairness to the spouse who has not made the separate property contribution. Unless the latter knows that the spouse contributing the separate property expects to be reimbursed or to acquire a separate property interest, he or she has no opportunity to attempt to preserve the joint ownership of the property by making other financing arrangements. *The act of taking title in a joint and equal ownership form is inconsistent with an intention to preserve a separate property interest.* Accordingly, the expectations of parties who take title jointly are best protected by presuming that the specified ownership interest is intended in the absence of an agreement or understanding to the contrary. (*Ibid.*, italics added.)

Despite its initial focus on only the "single-family residence" presumption, the court's later all-encompassing language leaves little doubt that *both* "form of title" presumptions may be rebutted only by a showing of a common understanding or agreement. The rationale that unfairness could result to a spouse who may be deprived of a seemingly conveyed property interest by the simple expedient of tracing applies to the "husband and wife" conveyance situation as well as the "single-family residence" joint tenancy situation. Husband argues that *Lucas* narrowly addresses only the "single-family residence" joint tenancy presumption of section 5110, but we disagree. The consistently broad language used to analyze the problem indicates to us an intent to form a single, logical rule to apply to both forms of title presumptions. Adoption of husband's argument would compel the paradoxical result that one form of title presumption could be rebutted by tracing, while the other form of title presumption could be overcome only by evidence of a common understanding or agreement. Clearly, such a conclusion is unsupported by authority or logic, and nowhere can we find a valid reason for distinguishing between the two forms of title presumptions.

Moreover, in *Lucas* the court expressly disapproved of *In re Marriage of Aufmuth* (1979) 89 Cal.App.3d 446 [152 Cal.Rptr. 668], in which title to the residence was taken in both husband and wife's names

and as community property, not as joint tenants, and in which wife then established a separate interest in that property by tracing. Had the *Lucas* court intended its rule to be applied only to joint tenancy property, the disavowal of *Aufmuth* would have been unnecessary.

Husband also argues that the scope of *Lucas* covers only single-family residences, not commercial warehouses. Again, the language of *Lucas* belies this contention. *Lucas* declares that all express designations of ownership create a stronger presumption than the more general first presumption of section 5110. There is no indication that this rule is to be modified by limiting it to only single-family residences. Spousal property purchases include far more than simply family homes. Failure to recognize this would be unrealistic and would only serve to establish artificial rule categories based on purely formalistic distinctions. We decline to follow this route.

In conclusion, there is no evidence of any agreement or understanding between the Cademartoris respecting separate property interests in the warehouse property. Both parties agree that the form of title to the property was never discussed, and that every aspect of the purchase and ownership of the property was conducted in either a joint or specifically community form (i.e., the joint C.D.s, the community conveyance of the property, placing the cashed-in C.D.s in a joint account, and putting the excess rental income from the property in a joint account). Since there is no evidence of a common understanding or agreement and no possibility of any such evidence arising, the "husband and wife" presumption of section 5110 has not been rebutted, and the property must be deemed community.

Judgment as to the warehouse property and as to the joint bank account is reversed and the cause remanded with directions to enter judgment declaring both to be community property, and to make such adjustments in the distribution of the property of the partners as to cause an equal division of the community property.

Feinberg, J., and Barry-Deal, J., concurred.

A petition for a rehearing was denied July 1, 1981, and respondent's petition for a hearing by the Supreme Court was denied July 29, 1981.