[Civ. No. 24058. Fourth Dist., Div. One. Sept. 30, 1981.]

In re the Marriage of NANCY R. and HARVEY S. HAYDEN.
HARVEY S. HAYDEN, Respondent, v.
NANCY R. HAYDEN, Appellant.

### COUNSEL

Sheela, Lightner & Castro and Christopher J. Schatz for Appellant.

Jones, Hatfield & Penfield, Stephen H. Boyle and James W. Barden for Respondent.

### OPINION

**WORK, J.**—Nancy Hayden correctly challenges that portion of an interlocutory judgment of dissolution ordering her husband and herself reimbursed in kind for their respective contributions toward down payment on the family residence, title to which was taken in community property without agreement or understanding to retaining separate interests.

### Background

Nancy and Harvey Hayden were remarried in October 1974, their first marriage ending in an Illinois divorce four months earlier. At the time each possessed a separate property residence in Deerfield, Illinois; Harvey owning a home awarded him in the previous divorce, and Nancy owning a condominium in the same community.

At reconciliation, Harvey changed title to his residence to include Nancy as a joint tenant. The issues arising in this appeal do not require or question the correctness of the trial court's implied determination Harvey retained his separate property interest following change of title. Nancy then sold her condominium, depositing her $25,000 proceeds into her separate savings account and moved into Harvey's residence.

When marital difficulties began anew, she relocated to California and transferred the proceeds from the sale of her condominium into a local account solely in her name.

Within a year, the parties attempted yet another reconciliation—with Harvey selling his Deerfield residence, transferring the $103,259 proceeds into the California account which had been changed to joint tenancy. The remaining $105,000 house down payment was paid from the joint account and title to the residence was taken as: "Harvey S. Hayden and Nancy R. Hayden, husband and wife, as community property."

Despite this final attempt at reconciliation, after three months in their new home, Harvey petitioned to dissolve the marriage and the parties legally separated.

Substantial evidence was presented to the court regarding the character of both the family residence and the jointly held savings account. The trial court expressly found, while the joint account was Nancy's separate property, the family residence was community and there was no understanding or agreement between the spouses either would receive less than a one-half interest in the home. Nonetheless, the court also found of the $105,000 down payment, $100,000 came from Harvey's separate property and the remainder from Nancy's. The court determined neither intended a gift of these monies and ordered reimbursement of their separate property contributions. It then valued the residence at $250,000, determined the community equity to be $41,000 and gave Harvey an option to purchase his wife's interest.

 Nancy correctly argues, since title to the family residence was taken as community property, the presumption of equal ownership arising therefrom may be overcome only by specific evidence showing a contrary agreement or understanding between the parties. (See *In re Marriage of Lucas* (1980) 27 Cal.3d 808 [166 Cal.Rptr. 853, 614 P.2d 285].) Neither was shown here. She asks the residence be revalued to reflect its present market worth on remand.

*Reimbursement*

This case illustrates daily hardships with which a conscientious, knowledgeable trial judge is faced by being forced to grapple with con-

flicting appellate court holdings on facts which, upon analysis, cannot be distinguished from those in the case pending resolution.[1]

By its holding in *In re Marriage of Lucas, supra,* 27 Cal.3d 808, our Supreme Court resolved conflicting appellate court approaches to the problem of determining ownership interests in residences purchased during a marriage with both separate and community funds. After analyzing the diverse appellate opinions, it adopted the approach approved in *In re Marriage of Trantafello, supra,* 94 Cal.App.3d 533, and established a clear rule: in the absence of an agreement or understanding between the parties, a private residence to which title is taken in joint tenancy or community property, is entirely community even though separate funds have been used in the purchase, maintenance or improvement of the home.

In light of this clear expression of law, binding us on this issue, and the factually supported findings by the trial court there was no understanding or agreement of the parties to the contrary, the trial court's allowing reimbursement of separate funds traceable to the acquisition of the residence was error.

### The Joint Tenancy Bank Account

On remand the court should also reexamine its conclusion the parties' joint savings account is Nancy's separate property. Its findings were limited to the issue of tracing the source of the funds. The question of whether the parties had any agreement or understanding as to the community or separate character of the joint savings account, was never addressed.

While it is undisputed the funds remaining in that account represent proceeds from the sale of her separate property Illinois condominium, by affirmatively changing the account from separate to joint tenancy in both spouses' names, Nancy created a rebuttable presumption of equal ownership which may be "overcome only by evidence tending to prove a common understanding or agreement that the character of the property

---

[1] It also points out the merit in not forcing the various districts within the Court of Appeal to blindly apply stare decisis to the holding first published. Here, *In re Marriage of Trantafello* (1979) 94 Cal.App.3d 533 [156 Cal.Rptr. 556], followed final contrary holdings in *In re Marriage of Bjornestad* (1974) 38 Cal.App.3d 801 [113 Cal.Rptr. 576], and *In re Marriage of Aufmuth* (1979) 89 Cal.App.3d 446 [152 Cal.Rptr. 668].

was to be other than joint tenancy." (*In re Marriage of Wall* (1973) 30 Cal.App.3d 1042, 1046 [106 Cal.Rptr. 690]; see *Machado* v. *Machado* (1962) 58 Cal.2d 501, 506 [25 Cal.Rptr. 87, 375 P.2d 55].) Simple tracing to a separate property source is not sufficient. (*In re Marriage of Wall, supra,* 30 Cal.App.3d 1042, 1047; *In re Cademartori* (1981) 119 Cal.App.3d 970 [174 Cal.Rptr. 292]; see also *In re Marriage of Lucas, supra,* 27 Cal.3d 808.)

*The Option*

■ The interlocutory judgment grants Harvey a 30-day option to purchase Nancy's community interest in the residence. Although Nancy claims the court erred in granting Harvey this option, she expresses no opposition to the house being sold. Whether her interest is purchased by Harvey or a third party, she will suffer equal tax consequences. She shows no prejudice from the order, does not challenge the correctness of the original appraisal, cites no relevant authority to support her position and, although filing formal objections to certain items in the trial court's memorandum of intended decision, raised no opposition to the proposed option.

Even though Harvey be permitted to exercise the option, Nancy insists the purchase price must now be based on the home's present market value, not on its worth at the time of the original order. She assumes the residence has substantially increased in value due to such nonpersonal factors as inflation and market pressures, creating a greater present community equity in which she is entitled to share under the equitable concepts applied in *In re Marriage of Walters* (1979) 91 Cal.App.3d 535 [154 Cal.Rptr. 180].[2]

Harvey, on the other hand, opposes reevaluation of the home because it would result in his substantial prejudice, since the greater current valuation would have accrued solely to him had his efforts to timely exercise the option not been frustrated by this appeal and Nancy's personal conduct. If there is a factual basis for his contentions, setting a higher current valuation would penalize Harvey, while rewarding Nancy, whose appeal did not prevail on this issue. However, on this record, we cannot determine why Harvey did not exercise his option in the absence

---

[2]Of course, should Harvey not exercise his option this issue is moot, no reevaluation is necessary and the court's original appraisal is irrelevant. The equity then to be divided will be measured solely by the third party purchase price.

of any stay order. There is no showing Harvey attempted to avail himself of the court's processes to assist in his exercising the option pending Nancy's unbonded appeal.

Additionally, Harvey insists reevaluation is statutorily barred by Civil Code section 4800[3] which requires property to be appraised "as near as practicably to the time of trial" and, since the home was actually appraised at trial, no later valuation may be undertaken.

We reject Harvey's narrow interpretation of section 4800 which, under certain circumstances, would defeat the statute's overriding purpose of insuring an equal division of community property.[4] *In re Marriage of Walters, supra*, 91 Cal.App.3d 535, 539, using equitable principles, held current valuation of community property at a hearing held two years after the dissolution trial was proper, where the later proceeding was the first in which the court divided the community assets. There, at trial, a residence had been awarded to a wife as her separate property and its valuation at that time was not relevant to the totality of community interests divided at that trial. Later, the court set aside its order and declared the residence community property. Noting the home's increase in value due to the nonpersonal factors during the two years in which husband was co-owner, the wife had its exclusive use, and husband derived no benefit from it, the court found equity required a valuation as near as practicable to the court proceeding *in which the property is actually divided.* To the same end, we believe section 4800 must be interpreted as requiring community property to be divided at its value as near as practicable to the court proceeding in which a *proper* division takes place. While normally it will be at trial, it may also be on remand after appeal.

On the facts of this case, if the option had been exercised within the time limits set by the interlocutory decree, equal division would have been achieved by using the then current valuation. If, in fact, Harvey's failure to exercise the option at that time was due to factors not reason-

---

[3]All references are to the Civil Code unless otherwise specified.

[4]Section 4800 provides in relevant part: "Except upon the written agreement of the parties, or on oral stipulation of the parties in open court, the court shall, either in its interlocutory judgment of dissolution of the marriage, in its judgment decreeing the legal separation of the parties, or at a later time if it expressly reserves jurisdiction to make such a property division, divide the community property and the quasi-community property of the parties, including any such property from which a homestead has been selected, equally."

ably within his control because of Nancy's appeal or her other acts, we see no equitable justification for reappraisal. However, on this record, we cannot determine whether Harvey's failure to purchase in accordance with the decree was due to other factors, such as a lack of present willingness, or financial inability. Nor are we aware to what extent Harvey attempted to use the court's process in compelling Nancy to perform under the court order, pending appeal. These facts, and their significance, should be determined in an appropriate proceeding on remand. Should the court find the delay in dividing the community property was not primarily due to Nancy's conduct or the pendency of this appeal, equity may well require a current valuation of all the undivided community property.

The order allowing reimbursement of funds used to purchase the marital residences is reversed; the order granting husband an option to purchase is affirmed; the matter is remanded and the trial court is directed to modify its finding to show the parties equally share the community interest in the home. Further, it shall conduct such proceedings as necessary to make findings on whether the presumption the joint savings account is community property, is overcome by a contrary agreement or understanding of the parties. Finally, it shall determine whether equitable factors make it unfair to allow the residential purchase option to be exercised at the original value.

Cologne, Acting P. J., and Wiener, J., concurred.