[Civ. No. 6149. Fifth Dist. Mar. 22, 1983.]

In re the Marriage of DINA M. and DEAN A. TUCKER.
DINA M. TUCKER, Respondent, v.
DEAN A. TUCKER, Appellant.

**130**

COUNSEL

G. June Register for Appellant.

Green, Green & Rigby and Mitchell Rigby for Respondent.

OPINION

**HAMLIN, J.**—Dean A. Tucker (hereinafter husband) appeals from portions of a judgment in Family Law Act proceedings. Specifically, husband contends the trial court erred in finding the recently acquired family residence (Greenwood residence) to be entirely community property and in denying husband reimbursement for payments on a refrigerator which he possessed during the period of separation. We disagree.

FACTS

Since only specific portions of the judgment are challenged, much of the evidence presented in the trial court is not relevant to this appeal. The principal asset in dispute was the Greenwood residence acquired during the one year and eight-month period of the marriage. Husband's and wife's interest in the single-family residence arises out of a "Real Estate Purchase Contract and Receipt for Deposit" (hereinafter purchase contract). This is a standard form provided by the California Association of Realtors.

The purchase contract was signed by husband and wife. It specified a $60,000 purchase price for the residence. At the end of the first numbered paragraph of the form, there is a preprinted instruction which reads, "Set forth above any terms and conditions of a factual nature applicable to this sale, such as financing, prior sale of other property, the matter of structural pest control inspection, repairs and personal property to be included in the sale." The typed portion of this paragraph begins with the statement, "Buyers will purchase house on Contract of Sale." It continues with a statement that the seller agrees to finance with Guarantee Savings & Loan the amount of $34,000, and buyers will make payments to the seller of $320 per month, representing interest only on the loan, for a period not to exceed one year.

At the time of purchase, the single-family dwelling was under construction with estimated completion within six to eight weeks. Husband testified at trial that he and his wife could not obtain conventional financing, and Federal Housing Authority (FHA) financing was unavailable to them until the house was one year old. Seller additionally agreed, pursuant to the typed instructions on the

purchase contract, to help buyers convert to FHA financing and to pay the selling points, after a period of six months but not to exceed one year.

Buyers gave seller a note in the amount of $16,000, secured by a deed of trust "on their present property located at 120 E. Dunham, Madera, California" (Dunham property). The funds to pay off that trust deed were to be transferred to the seller on the close of the escrow for the sale of the Dunham property. The seller was to carry a $10,000 note at 12 percent interest. Title was to be retained by the seller until the FHA financing could be arranged, and the buyers were to have possession at the time the residence was completed. The purchase contract further provided that "[u]nless otherwise designated in the escrow instructions of Buyer, title shall vest as follows: Dean A. Tucker and Dina M. Tucker, husband and wife, joint tenants."

At the time of trial escrow had not been opened, and title still remained in the seller. Nothing had been done to complete the financing arrangements. The entire down payment on the Greenwood residence, to be acquired under the purchase contract, came from the sale of the Dunham property. Husband testified he had stated in wife's presence that he wanted the Greenwood residence in his own name and that he wanted to sign the purchase contract alone. At that point wife responded that it was just as much her house as his.

Notwithstanding the provision of the purchase contract that a deed of trust was to be given on the Dunham property and the $16,000 was to be paid directly out of the escrow for the sale of that property, the case was tried on the theory that the net proceeds of sale of the Dunham property were deposited in the community bank account and were then paid to the seller.

Husband purchased the Dunham property five months before marriage for the sum of $25,500 and acquired title in his name alone as his sole and separate property. He made a payment of $1,453.96 at the close of escrow on the Dunham property, and the balance owing on the date of marriage—to wit, November 18, 1977—was $24,620. Husband and wife resided in the Dunham residence from the time of their marriage in November 1977 until the property was sold in March 1979. Following the marriage of the parties, all monthly payments on the Dunham property were made from the community checking account into which both parties deposited their earnings. The evidence is unclear as to the exact amount by which the principal balance of the loan on the Dunham property was reduced each month. Similarly, there is no reliable evidence of the remaining balance on the loan against the Dunham property at the time of its sale.

In arriving at its decision that the Greenwood residence was entirely community property, the trial court did not rely on the presumption set forth in

Civil Code section 5110 resulting from the provision in the purchase contract that title was to vest in husband and wife as joint tenants. Instead, the trial court determined that husband had failed to trace separate property funds utilized for the purchase of the Greenwood property with any degree of certainty.

I. *Whether substantial evidence supports the trial court's determination that the Greenwood residence was community property.*

The trial court did make a finding that the Greenwood residence was entirely community property.

"Findings of a trial court as to the separate or community character of assets are binding upon the appellate court if supported by substantial evidence. [Citations.]" (*In re Marriage of Trantafello* (1979) 94 Cal.App.3d 533, 546 [156 Cal.Rptr. 556].)

■ The only interest of husband and wife in the Greenwood property arises out of the purchase contract which was executed during their marriage. Civil Code section 5110 provides in pertinent part as follows: "When a single-family residence of a husband and wife is acquired by them during marriage as joint tenants, for the purpose of the division of such property upon dissolution of marriage or legal separation only, the presumption is that any such single-family residence is the community property of the husband and wife."

The Supreme Court in *In re Marriage of Lucas* (1980) 27 Cal.3d 808 [166 Cal.Rptr. 853, 614 P.2d 285] discussed the origin of the Civil Code section 5110 presumption with respect to a single-family residence acquired during marriage and held in joint tenancy. (*Id.*, at pp. 813-814.) The court recognized that the general presumption set forth in Civil Code section 5110, i.e., property acquired during marriage is community property, may be overcome simply by tracing the source of funds used to acquire the property to the separate property of one of the spouses and does not require the showing of an understanding or agreement between the parties as to the character of the property. The court held, however, that when such property was acquired and title taken in joint tenancy during marriage, it is presumed to be community property; that presumption can be rebutted only by a showing of an agreement or understanding to the contrary.

The court stated the rule as follows: "The rule requiring an understanding or agreement comes into play when the issue is whether the presumption arising from the form of title has been overcome. It is supported by sound policy considerations, and we decline to depart from it. To allow a lesser showing could result in unfairness to the spouse who has not made the separate property contribution. Unless the latter knows that the spouse contributing the separate

property expects to be reimbursed or to acquire a separate property interest, he or she has no opportunity to attempt to preserve the joint ownership of the property by making other financing arrangements. The act of taking title in a joint and equal ownership form is inconsistent with an intention to preserve a separate property interest. Accordingly, the expectations of parties who take title jointly are best protected by presuming that the specified ownership interest is intended in the absence of an agreement or understanding to the contrary. . . .'' (*In re Marriage of Lucas, supra,* 27 Cal.3d at p. 815.)

In reaching its decision to reverse the trial court because of the absence of any understanding that wife was to retain a separate property interest in the house, the court approved the decision of the Court of Appeal in *In re Marriage of Trantafello, supra,* 94 Cal.App.3d 533.

*In re Marriage of Cademartori* (1981) 119 Cal.App.3d 970 [174 Cal.Rptr. 292] considered the presumption that property acquired by an instrument describing the parties as husband and wife is community property. The court rejected the contention that the presumption could be overcome merely by tracing the funds used to acquire the commercial warehouse property or by the hidden intention of either party. The court required an agreement or understanding to show the property so acquired was the separate property of one of the spouses. (*Id.,* at p. 975; see *In re Marriage of Rives* (1982) 130 Cal.App.3d 138, 160 [181 Cal.Rptr. 572].)

■ In this case, in order to determine whether the community property presumption can be overcome by simple tracing of the funds used for acquisition or whether the stricter requirement of an express agreement or understanding between the parties must be applied, we need first to determine the essential nature of the purchase contract which the parties signed while married. We share the opinion expressed by the trial court that the purchase contract is neither fish nor fowl. Nevertheless, we do attach significance to the statement in the first paragraph thereof that ''Buyers will purchase house on Contract of Sale.'' We also note that the purchase contract provided for a change of possession from seller to buyers during the contract period, leaving the seller with only title as security. Buyers were not to acquire title until they could arrange FHA financing with the help of the seller in six to twelve months, with no requirement that title actually be conveyed at any specific time. Admittedly, there are other features of this purchase contract which are inconsistent with a finding that the purchase contract is a real property sales contract, such as the apparent intention to replace the purchase contract with a deed and a note secured by a deed of trust shortly after the property was one year old. But even with its conflicting characteristics, the purchase contract satisfies the definition of a real property sales contract as set forth in section 2985 of the Civil Code. That section reads as follows: ''A real property sales contract is an agreement

wherein one party agrees to convey title to real property to another party upon the satisfaction of specified conditions set forth in the contract and which does not require conveyance of title within one year from the date of formation of the contract." We conclude, therefore, that the purchase contract is a real property sales contract.

Having determined that whatever interest the parties have in the Greenwood residence is by virtue of a real property sales contract which provides for conveyance of title to them as husband and wife as joint tenants unless both otherwise express a different intention prior to close of escrow, we conclude the presumption that the parties' equitable interest is community property is rebuttable only by evidence of an express agreement to hold the property otherwise.

There is no reported case, however, which holds that anything less than actual conveyance of title gives rise to the third and fourth presumptions of Civil Code section 5110. The intent of the statute was to remedy those problems of divorce or separation which were created by the presumption, arising from the form in which the title was taken, that a husband and wife who owned a family residence as joint tenants each held a half interest as separate property. (See *In re Marriage of Lucas, supra,* 27 Cal.3d 808, 813.) In enacting Civil Code section 164, predecessor to Civil Code section 5110, the Legislature sought to "change the presumptive form of ownership to that more closely matching the intent and assumptions of most spouses who acquire and hold their residence in joint tenancy." (*Id.*, at p. 814.) The court in *Lucas* found no indication "that the Legislature intended in any way to change the rules regarding the strength and type of evidence necessary to overcome the presumption arising from the form of title." (*Ibid.*)

*In re Marriage of Cademartori, supra,* 119 Cal.App.3d 970 discusses the third and fourth "form of title" presumptions in terms of "the husband and wife conveyance situation." The opinion in *Cademartori* quoted from *Lucas* as follows: " 'The presumption arising from the *form of title* is to be distinguished from the general presumption set forth in Civil Code section 5110 that property acquired during marriage is community property. It is the *affirmative act of specifying a form of ownership* in the conveyance of title that removes such property from the more general presumption. [Citation.] It is because of this *express designation of ownership* that a greater showing is necessary to overcome the presumption arising therefrom than is necessary to overcome the more general presumption that property acquired during marriage is community property. In the latter situation, *where there is no written indication of ownership interests as between the spouses,* the general presumption of community property may be overcome simply by tracing the source of funds used to acquire the property to separate property. [Citations.]' (27 Cal.3d at pp. 814-815,

italics added.)'' (*In re Marriage of Cademartori, supra,* 119 Cal.App.3d at pp. 974-975.)

We are convinced that most of the language about form of title in *Lucas* and the other cases reviewed above is used merely because it fits the circumstances of the case under consideration. The language fits in all the decided cases because the usual method of acquiring ownership of single-family residences is by deed and note secured by deed of trust. In the *Lucas* opinion the court recognizes that the general presumption of community property may be overcome simply by tracing the source of funds used to acquire the property to separate property only in those instances *where there is no written indication of ownership interest as between the spouses.*

In the instant case, the purchase contract contains a written indication of ownership interest as between the spouses as husband and wife as joint tenants. The affirmative act of specifying a form of ownership does not appear in a conveyance of title, but it does appear in the document which creates in the parties their equitable interest in the property. There is no logical reason why the law should differentiate between those parties who are able to acquire title immediately by giving back a note and deed of trust as distinguished from those who have to acquire an equitable interest under a real estate sales contract and allow title to remain in the seller as security. To utilize a less strict presumption where a real estate sales contract is involved is just as likely to result in unfairness to the spouse who has not made the separate property contribution. The noncontributing spouse has the same need to know that the spouse contributing the separate property expects to be reimbursed or to acquire a separate property interest so that he or she can have the opportunity to attempt to preserve the joint ownership of the property by making other financing arrangements. We hold, therefore, because of the absence of any express agreement that the husband would retain a separate property interest in the Greenwood property, it is community property.

Having concluded that the presumption of community property which arises from the written indication of joint tenancy ownership in the purchase contract has not been rebutted, we need not consider whether husband failed to trace with the necessary degree of certainty his separate property funds to the Greenwood property. For the same reason, we need not consider husband's claim of error on the part of the trial court in improperly restricting his testimony concerning his separate property interest in the Dunham property and the tracing of the proceeds from the sale of that property into the down payment on the Greenwood property.

II. *Is husband entitled to reimbursement for payments after separation on the refrigerator in his possession?*

■ Our only remaining inquiry is whether substantial evidence supports the trial court's determination that husband is not entitled to reimbursement for postseparation payments on a refrigerator which the husband had in his possession between the date of separation and the date of trial. During the same period husband had possession, he made payments of $30 per month against the balance due on the refrigerator. Husband sought reimbursement of the amounts so paid. The trial judge ruled that the amount husband paid during the period he had exclusive use of the refrigerator, to wit, $30 per month on the outstanding balance of $450, was not substantially in excess of the value of the use. Accordingly, he concluded that husband was not entitled to reimbursement. We agree.

The general rule governing the right of reimbursement of one spouse for sums expended after separation to preserve and maintain the community property was reiterated in *In re Marriage of Epstein* (1979) 24 Cal.3d 76, 84 [154 Cal.Rptr. 413, 592 P.2d 1165], as follows: " ' [A] spouse who, after separation of the parties, uses earnings or other separate funds to pay preexisting community obligations should be reimbursed therefor out of the community property upon dissolution.' " (*Ibid.*, quoting *In re Marriage of Smith* (1978) 79 Cal.App.3d 725, 747 [145 Cal.Rptr. 205].)

However, both *In re Marriage of Smith, supra,* and *In re Marriage of Epstein, supra,* 24 Cal.3d 76, recognize that there are a number of situations in which reimbursement is inappropriate. The *Epstein* court stated as follows: " 'Reimbursement should not be ordered if payment was made under circumstances in which it would have been unreasonable to expect reimbursement, for example, . . . where the payment was made on account of a debt for the acquisition or preservation of an asset the paying spouse was using and the amount paid was not substantially in excess of the value of the use.' " (*Id.,* at pp. 84-85, quoting *In re Marriage of Smith, supra,* 79 Cal.App.3d 725.)

Substantial evidence supported the trial court's conclusion that the circumstances of the instant case came within the exceptions recognized in the *Epstein* opinion as set forth above.

The judgment of the trial court is affirmed in its entirety.

Zenovich, Acting P. J., and Woolpert, J., concurred.